EARL C. MAGOUN *vs.* LIBERTY MUTUAL INSURANCE
COMPANY.

Suffolk.    December 2, 1963. — January 13, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Insurance,* Defence of proceeding against insured, General liability insurance, Contractor's insurance.  *Contract,* Of indemnity.

A definition of "automobile" in a general liability insurance policy as "a land motor vehicle, trailer or semitrailer" plainly included a motor truck. [679]

Under a general liability insurance policy issued to a contractor doing steel erection in the construction of a school and binding the insurer to pay all sums which the insured should become legally obligated to pay as damages because of accidental bodily injury, including death, arising out of the "use of [the school] premises and all operations necessary or incidental thereto," exclusive of the "use, including loading or unloading," of trucks "while away from such premises," and to "defend any suit against the insured alleging" an injury within the coverage "even if such suit is groundless," the insurer was obliged to defend a tort action brought against the insured by the administratrix of the operator of a truck killed on railroad premises when steel joists being loaded on the truck by the insured for use in the school construction fell on the operator where the declaration in the tort action alleged that the insured was negligent "in the handling of a load of steel" on the railroad premises at the time of the accident and did not disclose that loading of a truck was involved, even if the insurer ultimately would not be liable under the policy to pay damages awarded against the insured.    [681–682]

In an action of contract by the insured against the insurer under a general liability insurance policy requiring the insurer to "defend any suit against the insured alleging" an injury within the coverage "even if such suit is groundless," where it appeared that the declaration in a tort action brought against the insured was broad enough to present a claim within the coverage and so the insurer was obligated to defend that action even though actually it had a substantial ground for disclaiming liability under the policy to pay damages awarded against the insured, that the insurer asked the insured's consent to the insurer's defending the tort action under a reservation of right to disclaim liability, that the insured denied the request, and that thereupon the insurer yielded control of the defence of the tort action to the insured at his request and coöperated with his counsel in a successful defence thereof, the insurer was liable to the insured for the reasonable charges of his counsel. [682–685]

CONTRACT. Writ in the Superior Court dated April 14, 1960.

The action was heard by *Murray, J.*

*Edward J. Barshak* (*Bertram A. Sugarman* with him) for the defendant.

*Frank P. Hurley* for the plaintiff.

CUTTER, J. Magoun, a subcontractor doing steel erection in the construction of a school in Hyde Park, seeks in this action of contract to recover from the insurance company (Liberty) his expenses in defending an action of tort brought against him by the administratrix of the estate of one Barker. The declaration (see fn. 3, *infra*) in that action alleged negligence causing Barker's death and conscious suffering. The present case, before us on Liberty's bill of exceptions, was heard in the Superior Court upon a statement of agreed facts. Liberty requested a ruling that "[o]n the facts stated, as a matter of law, there must be a finding for" Liberty. The trial judge denied this request and ordered judgment for Magoun in the sum of $3,526.48. Liberty has argued exceptions to the judge's action.

On December 23, 1950, Liberty issued a "schedule general liability policy (manufacturers' and contractors' form)" to Magoun. Coverage A of this policy, in effect when Barker was killed, bound Liberty to "pay on behalf of . . . [Magoun] all sums which . . . [Magoun] shall become legally obligated to pay as damages because of bodily injury . . . including death . . . resulting therefrom . . . caused by accident and arising out of the hazards hereinafter defined." Under the heading "Definition of Hazards," division 1 of the policy reads, "PREMISES — OPERATIONS — The . . . use of premises and all operations necessary or incidental thereto."[1] Under the heading "Exclusions" ap-

---

[1] Operations classifications specified included "Iron or Steel Erection — frame structures, iron work on outside of buildings including erecting or repairing balconies, fire-escapes, railings, staircases, coal chutes or fireproof shutters" (Code No. 3452) and Iron or Steel Erection — N[ot]. O[therwise]. C[lassified]. (Code No. 5057). Under an extension schedule heading "Division 1. Operations Location of Project," among Massachusetts locations listed was "Elementary School, Henry Grew District Hyde Park."

pears a provision (for convenience referred to as the "loading exclusion") which reads, "This policy does not apply: (a) under division 1 of the [d]efinition of [h]azards, to the . . . use, including loading or unloading, of . . . (2) automobiles while away from such premises or the ways immediately adjoining . . . ." The word "automobile" is defined as "a land motor vehicle, trailer or semitrailer," with certain exceptions not relevant. This definition plainly includes a truck. The policy, under the heading, "Defense, Settlement, Supplementary Payments," contained also an agreement by Liberty to defend Magoun, the pertinent portion of which appears in the margin.[2]

On May 22, 1951, "Magoun was engaged in removing steel joists from railroad cars . . . on premises [at 1670 Hyde Park Avenue] owned and controlled exclusively by" a railroad. "The . . . [railroad] premises properly were being used by Magoun in loading the steel joists onto trucks to be used in connection with the erection of the . . . [s]chool. The . . . [railroad] premises were not adjoining premises of Magoun," whose employees were doing the unloading and placing the joists on Magoun's trucks and "on a truck owned by C. E. Hall & Sons, which truck and a driver were hired by Magoun to help fulfill his job as a subcontractor. . . . Barker, the operator of the . . . [Hall] truck, was killed on the . . . [railroad] premises . . . when joists, which were loaded on the . . . [Hall] truck by employees of Magoun, fell upon him from that truck."

Prompt oral and written notice of the accident was given to Liberty. On August 29, 1951, Liberty wrote to Magoun, "[W]e are handling this claim under full reservation of rights under your policy contract with us. Our investigation to date indicates that . . . Barker's death arose out of the loading of the C. E. Hall truck. Your policy contract

---

[2] This provision reads in part, "As respects the insurance afforded by the other terms of this policy the company shall: (a) defend any suit against the insured alleging such injury . . . and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but . . . [Liberty] may make such investigation, negotiation and settlement of any claim or suit as it deems expedient . . . ."

with us does not provide protection to you under these circumstances.'' The letter then quoted the loading exclusion and continued, ''Please forward promptly . . . any correspondence or legal papers which may be served on you in order that we may review them to be sure that we give you all the protection to which you are entitled under the terms of your policy of insurance.'' Subsequently, ''an action of law[3] was brought by . . . [Barker's] [a]dministratrix . . . against Magoun and others. Liberty . . . notified Magoun that it was willing to undertake the defense of the action under the reservation set forth above. Magoun was unwilling to have Liberty represent it under the terms of that reservation and so notified Liberty. As a result, Magoun hired his own counsel to handle the defense of the . . . tort action. Counsel for Liberty thereafter cooperated with the counsel retained by Magoun in the defense of the . . . tort action,'' in which it ''was found . . . that the employees of Magoun negligently caused the death of . . . Barker . . . . The tort action resulted in a final judgment on October 6, 1958, for Magoun on the ground that the 'common employment' doctrine . . . [see G. L. c. 152, § 18, as amended through St. 1939, c. 93; see also *McPadden* v. *W. J. Halloran Co.* 338 Mass. 189, 192–194] was a complete bar to recovery. . . . Magoun . . . demanded that Liberty reimburse him for the . . . reasonable amount of the legal fee . . . [of] counsel who defended the tort action. Liberty . . . refused to make such reimbursement. The fair and reasonable amount of that legal fee is $2776.76.''

Liberty contends (a) that the accident occurred in circumstances within the loading exclusion, and (b) that Liberty should not be required to pay Magoun's legal expenses

---

[3] ''The declaration in the tort action against Magoun contained two counts, one . . . for conscious suffering and the other for . . . [Barker's] death . . . . The allegations concerning liability in each of the two counts were . . . 'And the plaintiff says that on . . . the 22nd day of May, 1951, the defendant, his agents or servants, *was engaged in the handling of a load of steel at the freight depot in Hyde Park* . . . that . . . while . . . [Barker] was lawfully on . . . [the] premises and in the exercise of due care, the defendant, his agents or servants, so negligently and carelessly handled said load of steel that by reason thereof, the steel fell on'' Barker (emphasis supplied).

in view of Liberty's offer to defend Magoun in the tort action under reservation of rights, Magoun's refusal of that offer, and Liberty's surrender to Magoun of control of defence of the tort action.

Liberty's basic, initial liability to defend under its agreement to do so (see fn. 2, *supra*) is determined by the allegations of the declaration in the tort action. Liberty was not required to defend unless the policy would bind it to indemnify Magoun if Barker's administratrix should prevail upon the allegations of the declaration. See *Fessenden School, Inc.* v. *American Mut. Liab. Ins. Co.* 289 Mass. 124, 128–130; *Lee* v. *Aetna Cas. & Sur. Co.* 178 F. 2d 750, 751 (2d Cir.); Appleman, Insurance Law and Practice (1962) §§ 4683–4685. The declaration in the tort action (see fn. 3, *supra*) was broad enough to require Liberty to defend Magoun, for the declaration was not sufficiently specific, at least in failing to mention that loading a truck was involved, to show that the case was within the loading exclusion.[4] Cf. the *Fessenden School* case, *supra,* at pp. 129–130. Upon the allegations it could have been found that "handling . . . a load of steel at the freight depot in Hyde Park" was "necessary or incidental" to the "use of [the school] premises" under the basic hazard definition, division 1. See *Reed Roller Bit Co.* v. *Pacific Employers Ins. Co.* 198 F. 2d 1, 2–3 (5th Cir.); Appleman, op. cit. §§ 4493.2–4493.4, 4500; Couch, Insurance 2d, §§ 44:300–44:304, 44:307. It does not necessarily follow, of course, merely because the declaration in the tort action stated a cause of action apparently

---

[4] For cases dealing with exclusions similar to the loading exclusion, or with the similar inclusions in motor vehicle liability policies see *August A. Busch & Co. of Mass. Inc.* v. *Liberty Mut. Ins. Co.* 339 Mass. 239, 241–244; *Nichols & Co. Inc.* v. *Travelers Ins. Co.* 343 Mass. 494, 497; *Connecticut Indem. Co.* v. *Lee,* 168 F. 2d 420, 423–425 (1st Cir.); *Lumbermens Mut. Cas. Co.* v. *Employers' Liab. Assur. Corp. Ltd.* 252 F. 2d 463, 465–466 (1st Cir.), discussed in *Peloquin* v. *Robert Northridge Furniture Co.* 338 Mass. 107, 109–110; *Farmers Union Oil Co. of Devils Lake* v. *Central Sur. & Ins. Corp.* 256 F. 2d 603, 606–608 (8th Cir.); *Upper Columbia River Towing Co.* v. *Maryland Cas. Co.* 313 F. 2d 702, 705–706 (9th Cir.); *Sam Finley, Inc.* v. *Standard Acc. Ins. Co.* 41 Tenn. App. 417, 427–428. Cf. *Sherman* v. *Employers' Liab. Assur. Corp. Ltd.* 343 Mass. 354, 356–357; *Tumblin* v. *American Ins. Co.* 344 Mass. 318, 319–320; *Employers Mut. Liab. Ins. Co.* v. *Pacific Indem. Co.* 167 Cal. App. 2d 369, 375–376.

within the coverage of the policy, that Liberty upon the facts actually proved upon a trial would be bound to satisfy a judgment for Barker's administratrix. The facts proved might involve no variance from the declaration and yet be clearly within the loading exclusion. Nevertheless, even if the proof would ultimately relieve Liberty from liability to indemnify Magoun against the judgment, Liberty would still be bound to defend the action.

The case presents a question not decided in *Salonen* v. *Paanenen*, 320 Mass. 568, in respect of Liberty's attempted reservation of rights to disclaim liability under the policy while offering to defend Magoun against the tort action. In the *Salonen* case, this court pointed out (p. 572) that "the defence of an action against an insured under a so called 'nonwaiver' agreement will not estop the insurer from subsequently disclaiming liability." See *Cassidy* v. *Liberty Mut. Ins. Co.* 338 Mass. 139, 143. It pointed out (pp. 573–574) the dilemma confronting an insurance company, when it discovers in the course of the defence of an action that it has a probable basis for disclaiming liability. If the insurer continues to defend, without taking other action, it runs "the risk of losing its right to disclaim later." See *Searls* v. *Standard Acc. Ins. Co.* 316 Mass. 606, 608–610. If it severs "its connection with the case, it . . . [runs] the risk of incurring liability to its assured" for breach of the covenant to defend. See *Salonen* case, at p. 574, and cases cited. See also *Goldberg* v. *Lumber Mut. Cas. Ins. Co.* 297 N. Y. 148, 154. This court concluded in the *Salonen* case that an insurer, who had (p. 574) "notified the assured that it [the insurer] would thereafter defend under a reservation of rights," was not estopped to disclaim liability at a later date, at least where the assured had not been lulled into a false sense of security by action of the insurer after learning of the ground for disclaimer. The *Salonen* opinion then proceeded (p. 574), "We are not to be understood as holding that an insurer may reserve its rights to disclaim liability in a case and at the same time insist on retaining control of its defence. But here the assured never, after

learning of the company's position, offered or attempted to assume defence of the action but, for aught that appears, acquiesced in the conduct of the case by the company."

Liberty here made a reservation by its letter of August 29, 1951, before the tort action was commenced (see *Marvel Heat Corp.* v. *Travelers Indem. Co.* 325 Mass. 682, 684–685; cf. *Berke Moore Co. Inc.* v. *Lumbermens Mut. Cas. Co.* 345 Mass. 66, 70–71) and apparently also after that action began. When Magoun turned out to be "unwilling to have Liberty represent it under the terms of . . . [the] reservation," Liberty did not insist upon retaining control of the defence of the tort action (cf. *Fidelity & Cas. Co.* v. *Stewart Dry Goods Co.* 208 Ky. 429, 438–439), and merely coöperated with Magoun's counsel. For this reason and because there was no recovery by the administratrix, we need not consider whether, if Liberty had insisted both on retaining control and upon its reservation of rights, it thereafter would have been estopped to deny liability for any recovery by Barker's estate. Various decisions elsewhere so indicate.[5] In any event, there was no acquiescence by Magoun in having the insurer conduct the defence under the reservation, as there was by the insured in the *Salonen* case (see p. 574).

We are thus confronted with the question whether the insurer must pay the insured's legal expenses, if the insurer (a) has a substantial ground for disclaimer of liability, (b) asks for the insured's consent to its defending under a reservation of right, (c) is denied that consent, and (d) then yields control of the defence to the insured at the latter's request. Our cases have not dealt with this precise point.

The covenant to defend (see fn. 2, *supra*) does not spell out in any great detail the insurer's obligation in such cir-

---

[5] See *Schmidt* v. *National Auto. & Cas. Ins. Co.* 207 F. 2d 301, 303–305 (8th Cir.); *Boise Motor Car Co.* v. *St. Paul Mercury Indem. Co.* 62 Idaho, 438, 448–449; *Merchants Indem. Corp.* v. *Eggleston*, 37 N. J. 114, 126–128; *Gerka* v. *Fidelity & Cas. Co.* 251 N. Y. 51, 56–58; *Beatty* v. *Employers' Liab. Assur. Corp. Ltd.* 106 Vt. 25, 34–37; Appleman, op. cit. § 4694; note, 68 Harv. L. Rev. 1436, 1446–1449; note, 2 Stanford L. Rev. 383, 386; annotation, 38 A. L. R. 2d 1148, 1169–1175. Cf. *New York & New Brunswick Auto Express Co.* v. *Massachusetts Bonding & Ins. Co.* 67 N. J. Super. 401, 402–403, 405.

cumstances. It, however, must be taken to require the insurer, to the extent that the facts permit, to defend the insured at least in good faith and without negligence. See *Murach* v. *Massachusetts Bonding & Ins. Co.* 339 Mass. 184, 187. See also *Abrams* v. *Factory Mut. Liab. Ins. Co.* 298 Mass. 141, 143–144; Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv. L. Rev. 1136, 1137–1148; Appleman, op. cit. §§ 4711–4715. We assume that the insurer may reasonably protect its own interests "for its own advantage" even "where there is a conflict of interest between insurer and insured" in respect of the right and duty to defend (see the *Abrams* case, *supra,* at pp. 143–144). Nevertheless, the insurer's discretion under the covenant to defend is not unlimited.

Where the insured's interest in controlling tort litigation against him conflicts with the similar interest of the insurer, the insured may have good cause to ask that he be represented by counsel independent of the insurer. The insurer, on the other hand, reasonably may be reluctant to entrust its possible obligation to indemnify to counsel not of its own selection, particularly where, as here, the obligation to defend exists largely, if not entirely, only because the declaration of the tort plaintiff is not stated in a manner revealing that the claim is not within the policy coverage. See note, 68 Harv. L. Rev. 1436, 1448; note, 2 Stanford L. Rev. 383, 387–388; annotation, 49 A. L. R. 2d 694, 700–703. See also Appleman, op. cit. § 4694.[6] It was the recognition of this type of potential clash of interests, which led us in *J. D'Amico, Inc.* v. *Boston,* 345 Mass. 218, 227, to permit separate representation of the insured at the expense of the insurer. See *Newcomb* v. *Meiss,* 263 Minn. 315, 319–322. See also *Stout* v. *Grain Dealers Mut. Ins. Co.* 307 F. 2d 521, 524–525 (4th Cir.).

---

[6] These discussions of the problem suggest the possibility of seasonable declaratory relief, a method employed in *J. D'Amico, Inc.* v. *Boston,* 345 Mass. 218, as a means of resolving such divergent interests. Cf. *Merchants Mut. Cas. Co.* v. *Leone,* 298 Mass. 96, decided before the enactment of G. L. c. 231A by St. 1945, c. 582, § 1, when declaratory relief was more restricted than it is today; *Merchants Indem. Corp.* v. *Eggleston,* 37 N. J. 114, 128. Cf. also *Employers Mut. Liab. Ins. Co.* v. *Ford Motor Co.* 335 Mass. 504, 506.

In the present case, in view of the possible divergence of interests, the parties have at least acquiesced in defence of the insured by counsel retained by him and Liberty has coöperated in that successful defence.   The agreed facts reveal no agreement or reservations concerning the cost of the independent defence.   Because Liberty could have included in the covenant to defend explicit provisions concerning the cost of defence in various situations some of which have been mentioned above, we think that uncertainty should be resolved against the insurer.   See the *D'Amico* case, 345 Mass. 218, 226.   Accordingly, we hold that, in the circumstances, the covenant to defend is broad enough to require Liberty to pay the reasonable charges of Magoun's counsel, who provided, with at least Liberty's acquiescence, the defence that Liberty itself was bound to furnish.   See *Goldberg* v. *Lumber Mut. Cas. Ins. Co.* 297 N. Y. 148, 154.

*Exceptions overruled.*