THOMAS J. PALERMO & another[1] *vs.* FIREMAN'S FUND
INSURANCE COMPANY.

No. 95-P-1690.

Hampden. May 14, 1996. - March 6, 1997.

Present: DREBEN, GILLERMAN, & LAURENCE, JJ.

*Consumer Protection Act,* Insurance, Unfair act or practice. *Unfair Compe-
tition. Insurance,* Unfair act or practice, Homeowner's insurance,
Insurer's obligation to defend, Defense of proceedings against insured.
*Nuisance.*

A Superior Court judge correctly concluded that the conduct of an insur-
ance company in contesting its liability under a homeowner's insurance
policy did not, in the circumstances of the underlying litigation, consti-
tute a violation of G. L. c. 93A or c. 176D, as the conduct reflected nei-
ther bad faith nor unfairness. [288-289]
An insurer that could have but failed to defend its insured with respect to
some claims in a civil complaint against its insured, and that did not
carry its burden of proof with respect to apportionment of a judgment
between claims that were covered by the policy and claims that were not
covered, was liable for the entire amount of the judgment against its
insured. [289-292]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 29, 1980.

The case was heard by *Raymond R. Cross,* J., and a motion
to amend the judgment was heard by him; entry of second
and third amended judgments was ordered by *William W. Si-
mons,* J., and *Mary-Lou Rup,* J., respectively.

The case was submitted on briefs.
*Louis Kerlinsky* for the plaintiffs.
*Frank Yesu* for the defendant.

LAURENCE, J. Prescinding from the numerous procedural
irregularities that have characterized the entire course of this
lengthy litigation, which we shall largely ignore, we glean

---

[1]Elizabeth R. Palermo.

from the jumbled record the following facts requisite to a decision of this appeal. In the early 1970's, Dorothy and Charlene Theresa Frew, next door neighbors of Thomas and Elizabeth Palermo, ran a noisome and noisy dog grooming business out of their home in Chicopee. During that time, the Fireman's Fund Insurance Company (Fireman's) provided the Frews with a homeowner's liability policy, which included an endorsement covering the business.[2]

Ongoing acrimony between the neighbors over the conduct of the dog grooming operations led to two separate civil actions commenced in 1972 by the Palermos against the Frews in Hampden County Superior Court. The first action, case no. 133028, apparently sounded solely in malicious prosecution, although the record contains no copy of the complaint.[3] Fireman's refused to provide the Frews with a defense in that action, asserting that the policy did not cover the claims made. The second action, case no. 133029, contained fourteen counts for personal injuries and property damage, alleged to have resulted from the Frews' negligence (counts 1-6), maintenance of a nuisance (counts 7-11), and breach of restrictive deed covenants (counts 12-14) in connection with their dog grooming business. Fireman's informed the Frews that it would provide a defense only for counts 1-6, maintaining that they were the only claims covered by the policy.

---

[2]The policy required Fireman's to indemnify the insured for "all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damages . . . caused by an occurrence." An occurrence was defined as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." Excluded from coverage was bodily injury or property damage "which is either expected or intended from the standpoint of the insured." On this appeal, the insurer does not contest the 1989 judicial conclusion that this policy covered the nonintentional nuisance which the Frews' dog grooming business was determined to constitute. Cf. *Massachusetts Turnpike Authy.* v. *Perini Corp.*, 349 Mass. 448, 454, 456-457 (1965); *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 149-151 & n.9 (1984).

[3]The two actions antedated the 1974 adoption of the Massachusetts Rules of Civil Procedure, and so were commenced by common law "declaration" rather than "complaint," but the latter term shall be used for convenience. The origin of the malicious prosecution action appears to have been some sort of allegation made by the Frews against the Palermos that led to the issuance of a criminal complaint against the Palermos, who were ultimately found not guilty. No further information about that incident is in the record.

The two actions were consolidated for trial, which commenced in June, 1979. At the close of the Palermos' evidence, the trial judge directed a verdict for the defendants on all the negligence counts. With those counts dismissed, the attorney provided by Fireman's withdrew and did not attend the rest of the trial. The Frews were thereafter represented by an independent attorney with respect to case no. 133028 and counts 7-14 of case no. 133029. The trial judge ultimately submitted the case to a jury on twelve special questions, pursuant to Mass.R.Civ.P. 49(a), 365 Mass. 812-813 (1974).

On July 2, 1979, in response to those questions, the jury found that the Frews had instigated a malicious prosecution against Elizabeth Palermo; that the Frews had intentionally and recklessly engaged in a course of extreme and outrageous conduct against Elizabeth Palermo but not against Thomas Palermo; that the Frews' conduct had caused the personal injuries claimed by Elizabeth Palermo but not by Thomas Palermo; that the Frews' conduct had caused property damage to the Palermos' premises; that the Frews had maintained a nuisance on their property; that the nuisance had caused the injuries claimed by both Elizabeth and Thomas Palermo; and finally, that Elizabeth Palermo had suffered damages in the amount of $15,000, Thomas Palermo had sustained damages in the amount of $3,500, and the Palermos' real property had causally suffered $3,500 of damages.[4]

The jury were not asked to, and did not, allocate the damages among the various counts for malicious prosecution, nuisance, and breach of covenant. Nor did the trial judge's three September, 1979, judgments on the special verdicts reflect a clear allocation. Analysis of the judgment forms reveals that Elizabeth Palermo individually prevailed, in the sum of $15,000, on her malicious prosecution claims (case no.

---

[4]The special questions and verdicts do not specifically track discrete counts of the consolidated complaints. They appear to be directed to claims for malicious prosecution, nuisance, and, possibly, breach of covenant; but those mentioning extreme and outrageous conduct sound in intentional infliction of emotional distress, rather than malicious prosecution. See *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 99-100 (1987). Since the record does not contain either the complaint in case no. 133028 or the jury instructions accompanying the special questions, we are unable to verify the precise causes of action stated in that matter, except to infer with confidence that all of the counts in that complaint must have alleged intentional torts, which would be excluded from the Frews' insurance coverage.

133028), on her nuisance claims (counts 8 and 9), and on a breach of restrictive covenant claim (count 12); both plaintiffs received judgments in the amount of $3,500 on their malicious prosecution claims, on their joint nuisance claim (count 7), and on their joint breach of covenant claim (count 14); and Thomas Palermo individually obtained judgment for $3,500 on his malicious prosecution claims, his nuisance claims (counts 10 and 11), and his breach of covenant claim (count 13). No appeal from these judgments was taken by any party.[5]

The Palermos did not attempt to collect the judgment against the Frews but rather made a demand on Fireman's in December, 1979, for the full amount of the judgment "in case 133029," omitting any reference to case no. 133028. Fireman's denied both coverage and any duty of indemnification for the nuisance or breach of covenant damages. In response, the Palermos shortly thereafter filed suit against Fireman's requesting a declaratory judgment that Fireman's was liable to pay their judgments against the Frews, seeking to reach and apply the proceeds of the Frews' policy with Fireman's to pay the judgments, and alleging violations of G. L. c. 93A and c. 176D by Fireman's failure to pay the judgments promptly.

A bench trial commenced in 1989 before a different Superior Court judge (hereafter "the judge"). It was restricted to the issue of Fireman's liability for nuisance damages by either the agreement or the acquiescence of the parties and the judge, but apparently without recognition of the fact that the 1979 damage awards and judgments had been based on three different but mingled theories of liability. After a trial characterized by numerous questionable but unobjected-to proceedings,[6] the judge found that Dorothy Frew had not intended to cause harm to the Palermos by the operation of

---

[5]Contrary to the Palermos' argument on appeal, those judgments did not bind Fireman's on the issue of coverage, but only as to the facts "tried and settled" in the consolidated cases against the Frews, i.e., the liability findings on malicious prosecution, nuisance, and breach of covenant. Fireman's was entitled — since the judgments encompassed grounds not covered by its policy — to litigate the coverage issue. See *Sheehan* v. *Goriansky*, 321 Mass. 200, 203, 205 (1947).

[6]For example, neither the transcript of the six-day 1979 trial nor the trial judge's instructions were produced. The judge allowed Elizabeth Palermo to testify extensively about both, including the purported 1979 testimony of

her business, nor was she substantially certain that such harm would occur. He ruled, therefore, that Fireman's policy covered the nonintentional nuisance claim and that Fireman's was required to indemnify its insured for damages awarded under the nuisance theory.

In view of the "combined verdicts" and judgments, the judge held that he could not sort out the damages attributable solely to the nuisance claims and ordered a new trial limited to that issue. He dismissed the claims against Fireman's under G. L. c. 93A and c. 179D. Because Fireman's policy liability for nuisance was not "reasonably clear" in 1979, its refusal to pay the underlying judgments was not, he held, made in bad faith or with reason to know it was unfair.

Both parties moved to amend the new judgment. The Palermos insisted that, because Fireman's had not requested that the issue of allocation of damages be submitted to the 1979 jury via special questions, the insurer was precluded from contesting the issue by virtue of Mass.R.Civ.P. 49(a). Fireman's countered that since the Palermos had failed to request separate damages for the nuisance counts, their damages for nuisance were unascertainable, and they were entitled to nominal damages only. After closer examination of the 1979 answers to special questions and judgments, the judge determined that the jury and the trial judge had awarded personal injury damages of $3,500 to Thomas Palermo solely under his nuisance counts, and that the property damage judgment of $3,500 for both Palermos could also only be attributed to the nuisance counts. He concluded, however, that the $15,000 award to Elizabeth Palermo could not be ascribed solely to her nuisance claims without speculation, because the judgment form clearly indicated that her judgment included the noncovered malicious prosecution claim.

In the absence of any relevant Massachusetts case law, the judge decided to adopt the rule apparently then followed by a majority of jurisdictions, which put the burden of apportioning damages, in cases where the judgment encompasses both covered and noncovered liabilities, on the insured who seeks

the Frews, without supportive authority for the unusual procedure but also without objection by Fireman's.

to recover from the insurer.[7] He then held that by failing to request allocation of the damages among the several counts in the questions submitted to the jury, Elizabeth Palermo had "lost her appellate rights" and was barred under Mass.R. Civ.P. 49(a) "from litigating the issue of apportionment of damages."[8] He therefore ruled for Fireman's as to Elizabeth Palermo's $15,000 judgment, which he ordered dismissed, while reaffirming the $3,500 judgments for Thomas Palermo individually and for Thomas and Elizabeth Palermo jointly.

After much inactivity and haggling over postjudgment interest, a final amended judgment reflecting those orders entered in October, 1991, from which the Palermos appealed.[9] They argue principally that the judge erred in dismissing their G. L. c. 93A and c. 176D claims and Elizabeth Palermo's $15,000 "nuisance" award. We affirm the former but reverse the latter.

We are easily rid of the Palermos' attack on the judge's rejection of their c. 93A and c. 176D claims, for the reason, if no other, that they have failed to demonstrate any error, clear or otherwise, in the judge's findings that Fireman's conduct under the circumstances reflected neither bad faith nor unfairness.[10] See *Gulezian* v. *Lincoln Ins. Co.*, 399 Mass. 606, 613

---

[7]The judge acknowledged the existence of a "minority view" that imposed the burden of proof of allocation on the insurance company, represented by the case of *Duke* v. *Hoch*, 468 F.2d 973 (5th Cir. 1972), but thought the "majority rule" preferable because "[a]fter all, the plaintiffs initiated the case . . . [and] should have known what the damages were and were in a better position to request allocation of the damages." The opinion in *Duke* v. *Hoch* was subsequently cited favorably by the Supreme Judicial Court as support for the proposition that a defense-defaulting insurer, and not the insured, bears the burden of allocating a judgment between covered and uncovered claims. See *Liquor Liab. Joint Underwriting Assn. of Mass.* v. *Hermitage Ins. Co.*, 419 Mass. 316, 323-324 (1995). See note 13, *infra.*

[8]See note 12, *infra.*

[9]The judge's restriction of the two $3,500 judgments to the nuisance claims was inconsistent with the 1979 forms of judgment, but Fireman's has not appealed that ruling. See *Walsh* v. *Chestnut Hill Bank & Trust Co.,* 414 Mass. 283, 289-290 (1993). This appeal also does not require substantive review of the problematic nuisance coverage ruling, which Fireman's has not appealed, does not argue was erroneous on the part of the judge, and has essentially conceded. The holding of policy coverage for nonintentional nuisance damages is now the law of the case. See note 2, *supra.*

[10]The Palermos presented no evidence on the issues of bad faith or unfair claims settlement practices, and there was nothing in the admissions or

(1987); *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass 7, 14-15 (1989).

We reverse, however, the dismissal of Elizabeth Palermo's $15,000 award and judgment, because the judge's reliance on the so-called "majority rule" on burden of proof as to claim allocation is not now the law of the Commonwealth.[11] Since the date of the judge's ruling, it has been determined that an insurer that breaches its duty to defend bears the burden of allocating a judgment against its insured between covered and noncovered claims.[12]

Fireman's had a duty to defend the Frews in the underlying 1979 action — indeed, it acknowledged that obligation by providing counsel to defend against the negligence counts. That duty to defend extended to the nuisance counts — wholly aside from the judge's ultimate conclusion that they were covered by the policy — since there was initially at least a possibility of coverage of such a claim under its policy, see *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318-319, 323-324 (1983), particularly in light of the types of harm alleged in the Palermos' complaint and the broad definitions accorded the triggering terms "occurrence" and "accident." See *Rideout* v. *Crum & Forster Commercial Ins.*, 417 Mass. 757, 762 (1994); *SCA Servs.* v. *Transp. Ins. Co.*, 419 Mass. 528, 532 (1995). See also note 2, *supra*. Additionally, it was Fireman's duty to defend all of the counts of the Palermo's complaint. See *Aetna Cas. & Sur. Co.* v. *Continental*

---

testimony of Fireman's representatives that would allow a finding of bad faith or unfairness. Despite the fact that its liability was found not to have been reasonably clear, Fireman's had an offer to settle the matter for $15,000 on the table from 1987 to 1989.

[11]See *Galvin* v. *Welsh Mfg. Co.*, 382 Mass. 340, 343-344 (1981); *Hingham* v. *Director of Div. of Marine Fisheries*, 7 Mass. App. Ct. 908 (1979) (it is the duty of appellate courts to render decisions that both note and reflect developments in the applicable law that occur pending appeal from final judgment).

[12]Although the point is academic in light of our discussion *infra*, the judge's ruling as to Elizabeth Palermo's supposed "loss of appellate rights" by failing to request a special verdict allocating damages was, as the Palermos contend, a misapplication of rule 49(a). Under that rule, any party that fails to request the submission of a factual issue to the jury or to object to the judge's failure to submit a factual issue loses the right to a jury trial on the omitted issue, not the right to challenge the validity of the judge's explicit or implicit determination of the omitted issue.

Cas. Co., 413 Mass. 730, 732 n.1 (1992); *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. at 318, 323 & n.15. See also *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. at 10 ("It is axiomatic that an insurance company's duty to defend is broader than its duty to indemnify").

An insurer that unjustifiably refuses or fails to defend its insured, even in good faith, assumes the consequential risks of that breach of its insurance contract. Those risks not only include liability for the amount of the judgment reflecting claims covered by the policy, but also extend to bearing the burden of proof with respect to apportionment of a judgment between claims that were covered by the policy and claims that were not covered. See *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 763-765 & n.22 (1993); *Liquor Liab. Joint Underwriting Assn. of Mass.* v. *Hermitage Ins. Co.*, 419 Mass. 316, 323-324 (1995)[13] ; *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 325-326 (1991). Fireman's has failed even to attempt, much less satisfy, that burden here and so must be held responsible for the entire amount of Elizabeth Palermo's $15,000 judgment. *Liquor Liab. Joint Underwriting Assn. of Mass.*, 419 Mass. at 324 & n.6.

Such a result is eminently fair, since Fireman's could (and should) have participated fully in the defense of the action against the Frews under a reservation of rights; and "had [it] participated, and explained to the trial judge in the [Palermos'] action [against the Frews] the need for a verdict which would require the jury separately to state their findings as to liability and damages between the [covered and noncovered] claims, it is likely that the judge would have employed other special questions to accomplish that result." *Id.* at 323. See also *Duke* v. *Hoch*, 468 F.2d 973, 979 (5th Cir. 1972), which

---

[13]In *Liquor Liab. Joint Underwriting Assn. of Mass., supra* at 323-324, the Supreme Judicial Court cited as support for the proposition that the defense-defaulting insurer bears the burden of allocating a judgment against the insured between covered and noncovered claims, *Duke* v. *Hoch,* 468 F.2d 973, 979-980 (5th Cir. 1972), one of the very authorities rejected by the judge in imposing the allocation burden on the insured.

involved, as here, a suit by a judgment creditor of the insured against the insurer to reach the policy benefits on account of that portion of the judgment derived from covered acts. There, the insurer, like Fireman's, had provided the insured with a partial defense of the underlying action pursuant to its duty to defend. The court held that the insurer was obligated to protect the insured's interests fully, even though the insured was also represented by separate counsel, by apprising the insured of the potential future allocation problem and of the availability of a special verdict to segregate covered damages. *Ibid.* Such, indeed, was the ethical obligation of the defense attorney provided by Fireman's to the Frews, who were owed by that attorney the full measure of the fiduciary duties of loyalty and independent judgment that would have been mandatory had he been retained directly by the insured. See *McCourt Co.* v. *FPC Properties, Inc.*, 386 Mass. 145, 147 (1982).

Fireman's is, therefore, obligated to the Frews to pay the entire amount of Elizabeth Palermo's nuisance judgment against them. As a judgment creditor of the Frews, Elizabeth Palermo — who is authorized by G. L. c. 175, §§ 112-113, and G. L. c. 214, § 3, to reach and apply the proceeds of the Frews' homeowner's liability policy in satisfaction of that judgment to the extent it embraces covered claims; who has established (for purposes of this litigation) that her nuisance claim is covered by the Fireman's policy, contrast *Shapiro* v. *State Farm Mut. Ins. Co.*, 355 Mass. 54, 56 (1968); and who derivatively stands in the shoes of the Frews in the reach and apply action, see *Morse* v. *Employers' Liab. Assur. Corp.*, 3 Mass. App. Ct. 712 (1975) — is entitled to the benefits of Fireman's discharge of that obligation.

Accordingly, so much of the judgment as dismisses Elizabeth Palermo's claim against the defendant is vacated and a new judgment shall enter permitting Elizabeth Palermo to reach and apply the proceeds of the Frews' homeowner's liability policy with Fireman's in satisfaction of her judgment against Dorothy and Charlene Theresa Frew, entered in Hampden Superior Court on September 7, 1979, in docket no. 133029 in the amount of $15,000, plus legal interest

thereon from August 7, 1972,[14] and costs of suit. In all other respects, the judgment is affirmed.[15]

*So ordered.*

---

[14]The Palermos are entitled to interest on the modified judgment on Elizabeth Palermo's claim from the dates of the original complaints (August 7, 1972). See G. L. c. 231, § 6H.

[15]We are aware that the Palermos have also asserted on appeal that the 1991 reaffirmance of the two $3,500 judgments, for Thomas Palermo individually and for Thomas Palermo and Elizabeth Palermo jointly, erroneously failed to award a larger amount ($5,479.15 for the former judgment and $5,368.80 for the latter) that properly included interest from the dates of the original 1972 complaints, see G. L. c. 231, § 6H, to (presumably) the date of the entry of the 1979 judgments.

We are unable to afford such relief, however. The gist of the Palermo's argument is that the judge who entered the final amended judgment in October, 1991, inadvertently failed to reflect such interest in the stated damages amount; but the Palermos failed to move to correct that oversight within the periods mandated by either Mass.R.Civ.P. 59(e), 365 Mass. 878 (1974)(ten days) or 60(b), 365 Mass. 828-829 (1974)(one year), which precludes judicial relief. See *Dalessio* v. *Dalessio,* 409 Mass. 821, 832-833 (1991).