HARTFORD CASUALTY INSURANCE COMPANY, Plaintiff,

v.

A & M ASSOCIATES, LTD.; S.J.V. Electric, Inc., Defendants.

A & M Associates, Ltd., Counter–Claimant,

v.

Hartford Casualty Insurance Company, Counter–Defendant.

No. CIV.A.99–403–L.

United States District Court, D. Rhode Island.

April 17, 2002.

Neal J. McNamara, Holland & Knight, LLP, Providence, RI, Robert Gaynor, Laura Meyer Gregory, Sloane & Walsh, Boston, MA, for plaintiff.

Thomas W. Heald, Roger Nathaniel Le-Boeuf, Providence, RI, for A&M Assoc., defendant.

Girard R. Visconti, David M. Campbell, Visconti & Boren, Ltd., Providence, RI, for S.J.V. Elec., defendant.

## OPINION AND ORDER

LAGUEUX, Senior District Judge.

This matter is before the Court on cross motions for summary judgement and presents a simple question: who should pay the bill? The bill at issue is for attorneys' fees for the services performed by Heald and Associates ("Heald") for A & M Associates, Ltd. ("A & M"). The services were performed while Hartford Casualty Insurance Company ("Hartford"), as insurer, defended its insured, A & M, against certain claims under a reservation of rights. A & M requested that Hartford provide a defense and indemnification of a counterclaim brought by S.J.V. Electric, Inc. ("SJV") in the underlying action. After Heald turned down the engagement, Hartford provided a lawyer to defend. The dispute centers on whether Heald, nevertheless, served as an independent counsel for A & M, for which Hartford is obligated to pay or Heald was personal counsel for A & M and thus, A & M must foot the bill. Clearly, Hartford provided counsel for A & M, Attorney C. Russell Bengston, but A & M claims that, under Massachusetts law, Hartford is obligated to pay Heald as well. This Court concludes that Heald was per-

sonal counsel to A & M and that Massachusetts law does not require Hartford to pay for Heald's services. Therefore, A & M's motion for summary judgement is denied and Hartford's motion for summary judgement is granted.

## PROCEDURAL HISTORY

### A. *The Underlying Action*

The underlying action was civil action 97–570L in this Court, entitled *United States for the Use and Benefit of A & M Associates, Ltd. v. National Grange Mutual Insurance Company and S.J.V. Electric, Inc.* It was filed on October 2, 1997 and assigned to this writer. The background facts are that SJV entered into a contract with the United States Department of Veterans Affairs ("VA") to upgrade the electrical system at the VA Medical Center in Providence, Rhode Island. SJV subcontracted part of the work to A & M. After the work was substantially completed, a dispute arose with the VA as to whether A & M's and SJV's performance was satisfactory. A & M, represented by Heald, claimed that it had done the job properly and that SJV refused to pay because the VA refused to pay. A & M sued on the Miller Act payment bond issued by National Grange and SJV. SJV later counterclaimed for damages asserting that A & M did not fulfill its obligations under the subcontract and also was negligent in doing the work. Hartford secured Bengston to defend A & M on the counterclaim, after it agreed to defend under a reservation of rights. After an extensive period of negotiations with the VA by both A & M and SJV the underlying case was settled and A & M was paid a sum of money for the labor and materials it furnished on the job. The settlement stipulation in C.A. 97–570L was filed on March 8, 2001.

### B. *This Action*

In 1999, Hartford initiated this action in the United States District Court for the District of Massachusetts, seeking a declaratory judgement that it had no duty to defend or indemnify A & M in the underlying action. Later, A & M filed a counterclaim seeking the payment of Heald's fees relating to the defense of the SJV counterclaim. In August, 1999, the action was transferred to this Court and assigned to this writer. On September 22, 2000, this Court issued an order staying the case pending resolution of the underlying action.

After the underlying case was settled and the stay vacated, both parties pursued their motions for summary judgement. Plaintiff Hartford had filed a motion for summary judgement claiming that it had no duty to defend or indemnify A & M as a counterclaim defendant in the underlying action. Defendant A & M filed a motion for summary judgement on its counterclaim, asserting that Hartford had a duty to defend and pay for separate independent counsel, Heald, in the underlying case. A & M also contended that Hartford should have hired an expert defense witness in the underlying case and claimed that Hartford violated Massachusetts General Laws Chapter 93A, the Commonwealth's Consumer Protection Act, but it informed the Court that it would not pursue the latter two claims. Because the underlying action was settled and no indemnification issue survived, the only remaining issue in this case is whether Hartford must pay for the services of Heald relating to the defense of SJV's counterclaim in the underlying case.

## JURISDICTION AND CHOICE OF LAW

This Court's subject matter jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332(a)(1). Hartford is an Indiana corporation and it is headquartered in Connecticut. A & M is a Massa-

chusetts corporation and its principal place of business is in the Commonwealth.

In cases based on diversity jurisdiction, the Court applies the substantive law of the state in which it sits, including that state's choice of law rules. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Spurlin v. Merchants Ins. Co.,* 57 F.3d 9, 10 (1st Cir. 1995). Rhode Island follows the 'interest-weighing' approach to determine what law to apply to a given situation. *Najarian v. National Amusements, Inc.,* 768 A.2d 1253, 1255 (R.I.2001). The Court reviews a series of factors to determine "the law of the state that bears the most significant relationship to the event and the parties." *Id.* (quoting *Cribb v. Augustyn,* 696 A.2d 285, 288 (R.I.1997)). In the case of insurance contracts, the Rhode Island Supreme Court has held that when the insured is a Massachusetts corporation doing business in Massachusetts, and the contract is executed and delivered in Massachusetts, Massachusetts law governs the interpretation of the contract. *Baker v. Hanover Ins. Co.,* 568 A.2d 1023, 1025 (R.I.1990). In the instant case, the insurance policy was issued in Massachusetts to a Massachusetts corporation. Therefore, Massachusetts law governs the interpretation of the insurance contract. *See id.*

This Court's choice of law analysis does not end there, however. Defendant has referred to the Rules of Professional Conduct for support (although it failed to specify which state's rules are applicable). The conduct of a Rhode Island attorney, when practicing law within the State of Rhode Island and in relation to litigation pending in the United States District Court in Rhode Island, necessarily must be governed by the Rhode Island Rules of Professional Conduct. This is so because when practicing law in this Court, a lawyer must abide by the Rhode Island Rules of

Professional Conduct, Local Rule 4(d), and Rhode Island has a strong interest in regulating the practice of law within its borders. *See Rhode Island Bar Ass'n v. Automobile Serv. Ass'n,* 55 R.I. 122, 179 A. 139, 143 (1935) ("The practice of law is affected with a public interest. It is, therefore, the right and duty of the state to regulate and control it so that the public welfare will be served and promoted."). Therefore, in this case, analysis of the requirements of professional conduct of Rhode Island attorneys practicing in Rhode Island clearly is governed by the Rhode Island Rules of Professional Conduct. *See Najarian,* 768 A.2d at 1255.

## STANDARD FOR SUMMARY JUDGEMENT

On a summary judgement motion, the Court must examine the record to determine if any genuine issue of material fact exists and whether the moving party is entitled to judgement as a matter of law. Fed.R.Civ.P. 56(c). If there are no questions of material fact, then summary judgement is appropriate on any questions of law. *Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996). The coincidence that both parties move for summary judgement does not relax the standards under Rule 56. *Id.* Barring special circumstances, the District Court must consider each motion separately, drawing inferences against each movant in turn. *Id.*

## THE UNDISPUTED FACTS

The instant case stems from the related action filed in this Court in 1997. In the 1997 action, defendant A & M sued SJV and its bonding company, on a Miller Act labor and material payment bond furnished by SJV and National Grange. Heald represented A & M on the Miller Act claim. In 1998, SJV filed an amended counterclaim alleging breach of contract and negligence by A & M. A & M request-

ed that its insurer, Hartford, defend and indemnify it with regard to SJV's counterclaim under A & M's insurance contract, a Commercial General Liability Insurance policy. Hartford agreed to defend under a reservation of its rights to dispute coverage. In telephone conversations, through counsel, Hartford informed A & M of the coverage dispute. Nevertheless, Hartford offered to appoint Heald to represent A & M on the counterclaim and pay for those services, but Heald informed Hartford's counsel that it had a conflict of interest and declined representation. Hartford then appointed Bengston as counsel. Thereafter, correspondence ensued between the lawyers for Hartford and for A & M regarding, among other things, the issue of independent counsel. The correspondence, summarized here, was attached to both parties' Local Rule 12.1 statements of facts.

In a February 23, 1999 letter to A & M, Hartford agreed to defend A & M subject to a reservation of rights. The letter also informed A & M that Hartford had assigned the defense work to attorney Bengston. The letter was sent from Hartford's counsel in the matter, Sloane and Walsh.

In a March 12, 1999 letter, A & M's counsel, Heald, responded to the reservation of rights letter. A & M, through Heald, contended that it was entitled to independent counsel. Heald expressed the belief that said firm could not represent A & M in the Miller Act action and Hartford on the SJV counterclaim without an impermissible conflict under the Rules of Professional Conduct. The letter states: "There would be conflicting duties between our responsibilities to A & M with respect to their Miller Act claim and our responsibilities to Hartford with respect to SJV's negligence claim. There is also a conflict because Hartford is only providing a defense to the counterclaim under a reservation of

rights. Under the circumstances, joint representation of A & M and Hartford would be barred by Rule of Professional Conduct 1.7(b). A & M and Hartford need separate counsel to represent their interests." After declining representation, Heald then submitted a bill to Hartford for its legal fees to date.

Sloane and Walsh responded in a March 24, 1999 letter. The letter expresses disagreement with Heald's opinion that there is a conflict and states that because of Heald's belief that said firm is unable to represent A & M in the matter, Hartford has appointed other counsel. The letter also rejects Heald's claim for fees and informs Heald that it is filing a declaratory judgement action to resolve Hartford's obligations under the policy.

In a May 4, 1999 letter, Heald writes that it is independent counsel on the counterclaim for negligence and then later characterizes its position as co-counsel on the negligence claim. Heald also opines that Massachusetts law requires "that the insurer is responsible for the costs of its own defense and the separate defense of the insured where there is a potential conflict of interest caused by the insurer's assertion of a defense under reservation of rights."

In a May 18, 1999 letter, Sloane and Walsh continue to inform Heald that Hartford is not paying Heald's legal fees and that Bengtson is A & M's independent defense counsel because Heald declined representation. Sloane and Walsh also relay that A & M could, if it so chooses, select Heald as counsel to defend the counterclaim from that point forward. Furthermore, the letter states that under that scenario, Hartford would pay the for Heald's services.

There is some dispute about the exact process by which counsel was selected but the Court does not need to resolve who

said what to whom and when in order to settle this dispute. The material facts are that Bengston acted as counsel for A & M, secured by Hartford, after A & M's attorney, Heald, declined representation. Heald could have been counsel on the matter, paid by Hartford, but declined to assume representation as, in its view, representing A & M on an engagement by Hartford presented a conflict of interest. Heald, undoubtedly, in representing A & M offensively on the Miller Act claim did legal work which was of benefit to A & M on SJV's counterclaim.

LEGAL ANALYSIS

■ A & M contends that Massachusetts law requires that Hartford, because it opted to defend under a reservation of rights, must pay Heald as independent counsel. Hartford counters that it complied with Massachusetts law by securing Bengston as independent counsel for A & M on the counterclaim and need not pay Heald's fees. This Court concludes that Hartford complied with Massachusetts law because it provided independent defense counsel to A & M on the counterclaim.

A. *Requirements Under Massachusetts Law*

There is much in this dispute on which the parties agree. The parties agree that when there is an unconditional duty to defend, the insurer controls the defense. Such a situation presents no conflict between the insurer's position and the insured's position. Also, the insurer can deny liability and refuse to defend. *See Terrio v. McDonough*, 16 Mass.App.Ct. 163, 450 N.E.2d 190, 194 (1983). That scenario also creates no conflict between the insurer and the insured, at least in the defense of the claim at issue. In contrast, when the insurer defends under a reservation of rights, a potential conflict between the insured and insurer may arise. *Ma-*

*goun v. Liberty Mut. Ins. Co.*, 346 Mass. 677, 195 N.E.2d 514, 518–19 (1964). The insurer has reserved the right to argue, at a later date, that all or part of the insured's claim falls outside of policy coverage. *Id.*

During such litigation, an attorney may become aware of facts tending to prove or disprove whether the liability is covered by the policy. The attorney is in an ethical bind, possessing knowledge that may help one party and hurt another. Even if no actual conflict ever materializes, the threat of conflict is so great that a reservation of rights defense is often treated as an actual conflict. *See Magoun*, 195 N.E.2d at 519; 14 *Couch on Insurance* § 202:23 (3d. ed.1999). Under different circumstances, such a conflict might preclude simultaneous representation by one attorney. Rule 1.7 allows representation of two clients if, objectively, the representation of either client "will not be adversely affected" and both clients consent. A client is adversely affected when litigation over his or her liability coverage is probable, the attorney will become aware of information that directly benefits one client to the detriment of the other, and one client pays for the attorney. In insurance cases, however, this analysis is not strictly followed because of the need for the insured to be represented and the insurer not to be liable for failing to observe its duty to defend. The public policy solution to this ethical dilemma, however precarious for an attorney, is to appoint independent counsel. *See Magoun*, 195 N.E.2d at 519. In these situations of divergent interests, as both parties here agree, the insured is entitled to control the defense and to secure independent counsel, with reasonable costs to paid by the insurer. *Id.* ("Where the insured's interest in controlling tort litigation against him conflicts with the similar interest of the insurer, the insured

may have good cause to ask that he be represented by counsel independent of the insurer."). Here, since Hartford defended under a reservation of rights, A & M was entitled to independent counsel. *See id.* Neither party disputes this point of law.

■ The parties do not agree, however, on what constitutes adequate independent counsel under Massachusetts law. Independent counsel is counsel chosen by the insured or with the approval of the insured, but whose fees are paid by the insurer. *Magoun,* 195 N.E.2d at 518–19. The case law does not define independent counsel. After reviewing the case law and policy concerns at play, i.e., the avoidance of conflicts, the Court can delineate some basic characteristics of an independent counsel. Independent counsel must be one who operates independently of the insurer—the litigation cannot be controlled by the insurer. *See id.* Independent counsel also cannot become involved in coverage disputes. *See* 14 *Couch on Insurance* § 202:23 ("Conflict exists when the outcome of the coverage issue can be controlled by counsel first retained … for defense of the tort claim."). Independent counsel cannot be an in-house counsel of the insurance company or in a 'captive' law firm, i.e., one that primarily relies on the insurance company for its income. Independent counsel, although paid by the insurer, must be loyal only to the insured, owing the insured "the full measure of the fiduciary duties of loyalty and independent judgement." *Palermo v. Fireman's Fund Ins. Co.,* 42 Mass.App.Ct. 283, 676 N.E.2d 1158, 1164 (1997).

Other jurisdictions have prescribed that counsel be independent by requiring that the insured have the absolute right to select independent counsel of his or her choice and that the insurer reimburse any fees. Some jurisdictions allow the insurer to appoint counsel or participate in coun-

sel's selection, consistent with its obligations to act in good faith. *See, e.g., Federal Ins. Co. v. X–Rite, Inc.,* 748 F.Supp. 1223, 1227–228, 1229 (W.D.Mich. 1990) (summarizing the rule in different jurisdictions). Whether Massachusetts law mandates that A & M be able to select its own independent counsel, without input from the insurer, is not an issue before this Court because A & M never made this argument in its memoranda of law, and also because Heald declined to be independent counsel when Hartford so suggested, because it determined that such representation violated Rule 1.7 of the Rules of Professional Conduct. Heald cannot now argue that it was A & M's choice to be independent counsel. The question before the Court is not who has the right to choose independent counsel, but what constitutes adequate independent counsel under Massachusetts law.

## B. *Analysis*

■ Defendant contends that, under Massachusetts law, plaintiff must provide A & M with its own separate independent counsel to defend the counterclaim, as well as secure separate independent counsel to represent plaintiff's interests in defending the counterclaim. Essentially, defendant argues that adequate independent counsel must consist of two separate attorneys. Defendant misinterprets the law. Defendant's legal citations do not support the contention that plaintiff must pay both Heald and Bengston for their legal services as independent counsel. Massachusetts case law, cited by defendant, reiterates and reaffirms the rule established in *Magoun:* where good cause is shown, independent counsel should represent the insured. *See J. D'Amico, Inc. v. City of Boston,* 345 Mass. 218, 186 N.E.2d 716, 722 (1962) (ordering that insured receive independent counsel at insurer's expense until

issue was adjudicated); *Terrio*, 450 N.E.2d at 194 (holding that insurer had no duty to defend, but noting in dicta that the insurer may have to appoint separate counsel for the insured). *Terrio*, a Massachusetts case, focuses on whether the insurer has a duty to defend an intentional tort that, based on the complaint, fell outside of coverage. 450 N.E.2d at 194. The Court notes that when there is a dispute over coverage, the insurer may be responsible for its own defense on the coverage issue, and a separate defense of the insured on the claim. *See id.*

Defendant cites cases from outside of Massachusetts to contend that Massachusetts law mandates separate independent counsel for the insurer and the insured. First, those cases do not purport to set forth Massachusetts law and do not control the outcome of this dispute. Second, those cases reiterate that when there is a conflict between the insured and the insurer, the insured is able to take control of the defense and have independent counsel furnished at the expense of the insurer. *See San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y*, 162 Cal.App.3d 358, 208 Cal.Rptr. 494, 506 (1984) ("[W]here there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured."); *Maryland Cas. Co. v. Peppers*, 64 Ill.2d 187, 355 N.E.2d 24, 31 (1976) ("Peppers has the right to be defended ... by an attorney of his choice who shall have the right to control the conduct of the case. By reason of St. Paul's contractual obligation to furnish Peppers a defense it must reimburse him for the reasonable cost of defending the action."); *Parker v. Agricultural Ins. Co.*, 109 Misc.2d 678, 440 N.Y.S.2d 964, 967 (N.Y.Sup.Ct.1981) ("[W]here conflict of interest and loyalty

are apparent .... the insured has the right to obtain counsel of its own choice to be paid for by the insurance company."). Those cases do not stand for the proposition that when defending under a reservation of rights the insurer must appoint separate independent counsel for both itself and the insured.

Defendant also cites a Rhode Island Supreme Court decision, which suggests two possible solutions to this conflict of interest question. *Employers' Fire Ins. Co. v. Beals*, 103 R.I. 623, 240 A.2d 397, 404 (1968). The *Beals* Court specifically noted that these were simply proposals and not the exclusive means of addressing this problem. *Id.* First, *Beals* suggests the independent counsel approach, where counsel is appointed by the insured and reimbursed by the insurer. *Id.* Second, the Court suggests the appointment of two different attorneys, akin to defendant's argument. *Id.* This latter alternative has been criticized as unworkable. "This view has not met with enthusiasm by trial judges. In almost all situations it is totally impracticable to have two lawyers defending the same client." Richard L. Neumeier, *Serving Two Masters: Problems Facing Insurance Defense Counsel and Some Proposed Solutions*, 77 Mass. L.Rev. 66, 80 (1992) (discussing the *Beals* decision). Interestingly, the Court would require the insurer's approval in both situations. *Beals*, 240 A.2d at 404 ("Because the insurer has a legitimate interest in seeing that any recovery ... is kept within reasonable bounds, and since the total expense of this defense is to be assumed by the insurer under its promise to defend, we believe that in each of the above two suggestions the engagement of an independent counsel to represent the insured should be approved by the insurer."). Unlike Rhode Island, Massachusetts has explicitly adopted a single approach, similar to the

first alternative presented in *Beals*, appointment of independent counsel. *Compare Magoun*, 195 N.E.2d at 519 *with Beals*, 240 A.2d at 404. Additionally, defendant did not satisfy the *Beals* requirement that both attorneys be approved by the insurer. Plaintiff never approved the retention of Heald. *See Beals*, 240 A.2d at 404. If plaintiff had, this litigation would be unnecessary.

Furthermore, defendant does not claim that it did not consent to Bengston's appointment nor does defendant claim that Bengston was not independent of Hartford. Defendant does not contend that the appointment of Bengston was unreasonable because he was somehow a captive of Hartford. In the May 18, 1999 letter from Sloane and Walsh to Heald, plaintiff elaborated on Bengston's role in the defense of A & M. The pertinent portion of the letter states:

> Attorney Bengston does not represent The Hartford in the Rhode Island Act [sic], and, in fact, The Hartford is not a party to the Rhode Island Action. You seem to be under the misconception that Attorney Bengston represents The Hartford with regard to the counterclaim and that you represent A & M with regard to the counterclaim. This is not correct. Attorney Bengston's client and the party upon whose benefit he acts is counsel for A & M....
>
> Although, as discussed above, The Hartford is obligated to pay the cost of the defense of its insured, whether that be counsel chosen by the insured or by The Hartford, The Hartford does not have an obligation to pay both the cost

of defense counsel (C. Russell Bengston) and the insured's personal counsel. If the insured chooses to also have representation by personal counsel in a matter that is being handled by defense counsel, it does so at its own expense.

The letter explains that it was Hartford's understanding that Bengston's representation of A & M was independent of Hartford and notifies A & M of that understanding. Defendant does not question Bengston's independence. The Court concludes that Bengston was independent of Hartford and could and did serve as independent counsel to A & M in defense of the counterclaim.

■ Defendant argues that Rule 1.7 precluded Heald's representation of both A & M and Hartford in this matter.[1] The Rhode Island Rules of Professional Conduct, while perhaps mandating that Heald decline representation because of a conflict, do not impose conditions on insurance contracts governed by Massachusetts law. Simply because one attorney may have been unable to represent A & M because of a conflict of interest does not mandate the outcome that defendant seeks here. Although the policy goals of the conflict of interest rule and the independent counsel rule may be entangled, the conflict of one particular attorney does not require the adoption of a general rule that two independent counsel be appointed in this matter.

While the conflict between the insurer and insured is palpable, there are rules that attempt to resolve it. First, the Rules of Professional Conduct establish

---

1. "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved." R.I. Rule of Prof'l Conduct 1.7(b).

that the duty of loyalty is owed to the insured, not the insurer. *See* R.I. Rule of Prof'l Conduct 1.8(f); Rule 1.7 cmt. The Rules explicitly recognize that when compensation comes from a source other than the client, an attorney's loyalty may be jeopardized. To make it explicit that the attorney owes his or her duty to the client and not to the income source, Rule 1.8 requires client consent, the lawyer's ongoing independent professional judgement, and the protection of attorney-client confidentiality.[2]

Second, the commentary section to Rule 1.7 of both the Massachusetts and Rhode Island Rules of Professional Conduct explain the responsibility of the insurer to provide independent counsel. "For example, when an insurer and its insured having conflicting interests in a matter arising from a liability insurance agreement, and the insurer is required to provide special counsel for the insured, the arrangement should assure the special counsel's professional independence." R.I. Rule of Prof'l Conduct 1.7 cmt.; Mass. Rule of Prof'l Conduct 1.7 cmt. Nothing in the Rules of Professional Conduct requires that both Heald and Bengston be separate independent defense counsel in this matter.

Insofar as plaintiff might need separate counsel in this matter, its representation would concern the issue of policy coverage, not defense of the counterclaim. Sloane and Walsh acted as counsel to Hartford on the matter of policy coverage. Sloane and Walsh drafted the letter informing A & M that Hartford was defending under a reservation of rights. In the first line of that letter, Sloane and Walsh informed A & M that said office "represents The Hartford

with regard to the captioned matter." The caption refers to the claim number, the policy number and the topic of reservation of rights. Clearly A & M knew that Sloane and Walsh represented Hartford in the matter of policy coverage.

Finally, this Court notes that Massachusetts law only requires reimbursement for reasonable attorneys' fees. *Magoun*, 195 N.E.2d at 519 (holding that insurer must "pay the reasonable charges of [independent] counsel"). To demand that Hartford pay two counsel to do the job of one is patently unreasonable. Even those jurisdictions that hold that the insured has an absolute right to choose independent counsel require that attorneys' fees be reasonable. *See, e.g., United Pacific Ins. Co. v. Hall*, 199 Cal.App.3d 551, 245 Cal.Rptr. 99, 102 (1988) ("While *Cumis* may prohibit an insurer from dictating the tactics of litigation, it does not delegate to [independent] counsel a meal ticket immunized from judicial review for reasonableness."). Defendant's counsel cannot decline representation, and then do a rapid U-turn when it comes time to pay the bill.

Heald declined to be independent counsel at the outset of the underlying litigation. Thereafter, Hartford appointed Bengston independent counsel, consistent with Massachusetts law, and in order to comply with Massachusetts law. *See Magoun*, 195 N.E.2d at 519. After further conversations with Hartford, Heald was again offered the opportunity to become independent counsel. Again, Heald declined. Now, defendant seeks reimbursement for Heald's services in relation to the defense of the counterclaim. As a matter of Massachusetts law, defendant has no

---

**2.** "A lawyer shall not accept compensation for representing a client from one other than the client unless: (1) the client consents after consultation; (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and (3) information relating to representation of a client is protected as required by Rule 1.6." R.I. Rule of Prof'l Conduct 1.8(f).

claim for reimbursement. *See id.* Hartford supplied defendant with independent counsel, attorney Bengston. *See id.* Any work that Heald did in conjunction with the litigation was as personal counsel to A & M. *See id.* Heald illustrated the truth of the old adage borrowed from the football world that "the best defense is a good offense." Heald secured an affirmative recovery for A & M and thus, A & M was not held liable on the counterclaim. But Heald is not entitled to be reimbursed by Hartford for that work. Bengston was paid by Hartford for defending A & M and he was successful in that endeavor so the issue of coverage never had to be resolved.

This Court holds that under the circumstances of this case plaintiff, Hartford, is not liable for Heald's attorneys' fees.

CONCLUSION

For the forgoing reasons, defendant's motion for summary judgement is denied and plaintiff's motion for summary judgement is granted. The Clerk shall enter judgement for plaintiff Hartford to the effect that this Court declares that plaintiff is not required to pay defendant's counsel fees incurred in the underlying action.

It is so ordered.