# United States Court of Appeals
## For the First Circuit

No. 09-1239

HEIDI M. BAKER,

Plaintiff, Appellant,

v.

ST. PAUL TRAVELERS INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Lipez, Stahl and Howard, Circuit Judges.

Merrill Friedemann with whom Anthony Gianfrancesco and William F. Warren were on brief for appellant.
    Paul V. Sullivan for appellee.

February 17, 2010

**STAHL**, **Circuit Judge**.  This case arises out of a car accident on December 17, 2002, in Boston, Massachusetts.  On that day, Heidi M. Baker, the plaintiff-appellant and a resident of Rhode Island, was driving a vehicle owned by her employer, Safety Source Northeast[1] ("Safety"), as part of her job duties.  Baker was seriously injured in the car accident, which was caused by the other driver.  Baker filed a third-party claim against the tortfeasor, but the other driver's insurance coverage was insufficient to cover Baker's damages.  Baker also filed for and received workers' compensation ("WC") benefits through the Rhode Island workers' compensation system.  Finally, Baker sought to recover under the Underinsured Motorist (UIM) provision of her employer's automobile insurance policy,[2] which was provided by St. Paul Travelers Insurance Company ("St. Paul"), the defendant-appellee in this case.  St. Paul denied Baker's attempt to recover under the UIM provision, citing Massachusetts law for the proposition that an employee cannot recover for work-related injuries under both workers' compensation and her employer's UIM coverage.

---

[1]Safety Source Northeast is a Massachusetts corporation with its principal place of business in Massachusetts.  According to Baker, Safety is licensed to do business in Rhode Island and Baker was hired by Safety in Rhode Island and exclusively worked out of Safety's Rhode Island office, in Warwick, Rhode Island.

[2]The insurance policy was executed and delivered in Massachusetts.

In response to the denial, Baker filed a complaint in Rhode Island state court seeking a declaratory judgment regarding her eligibility for coverage under St. Paul's UIM coverage.[3] St. Paul removed the case to Rhode Island District Court and Baker and St. Paul both moved for summary judgment. A magistrate judge recommended granting St. Paul's motion and denying Baker's, on the grounds that Massachusetts law governed the matter and Massachusetts case law prohibited recovery by an injured employee under both workers' compensation and her employer's UIM coverage. Baker filed a written objection to the report and recommendation, arguing that Rhode Island law should apply, but that even under Massachusetts law the bar on recovery under both workers' compensation and the employer's UIM coverage did not apply where the UIM coverage was a bargained-for provision. Nonetheless, the district court adopted the magistrate's report and recommendation in full, writing additionally only to correct an error in the magistrate's report. See Baker v. Safety Source Northeast, No. 07-314 ML, 2009 WL 211865 (D.R.I. January 28, 2009). This appeal followed.

For the following reasons, we disagree with the conclusion reached by the district court and will remand this case for further proceedings consistent with this opinion.

---

[3]Baker also brought suit in state court against her employer, Safety. After removal by Safety to federal court, Baker voluntarily dismissed her claim against Safety.

-3-

As a preliminary matter, we must determine what law governs the question before us. Because this court is sitting in diversity, we apply the choice of law rules of the forum state, here, Rhode Island. See Montalvo v. Gonzalez-Amparo, 587 F.3d 43, 46 (1st Cir. 2009). Under Rhode Island law, "[W]hen the insured is a Massachusetts corporation doing business in Massachusetts, and the contract is executed and delivered in Massachusetts, Massachusetts law governs the interpretation of the contract." Hartford Cas. Ins. Co. v. A & M Assoc., Ltd., 200 F. Supp. 2d 84, 87 (D.R.I. 2002) (citing Baker v. Hanover Ins. Co., 568 A.2d 1023, 1025 (R.I. 1990)). Thus, in this case, Massachusetts law applies.[4]

The district court concluded that two decisions from the Massachusetts Supreme Judicial Court (SJC), Berger v. H.P. Hood,

---

[4]Baker argues that Rhode Island law should apply under the interest-weighing approach adopted in Woodward v. Stewart, 243 A.2d 917, 923 (R.I. 1968). Such a conclusion would clearly advantage Baker because Rhode Island law seems to permit an injured employee to recover under both workers' compensation and her employer's UIM coverage, provided the WC payment is reduced by the amount of the UIM recovery (an "offset"). Though the parties cite to no definitive Rhode Island case so holding, there are numerous cases that suggest this result. See, e.g., Poulos v. Aetna Cas. & Sur. Co., 379 A.2d 362, 365 (R.I. 1977) (where an injured employee's personal UIM coverage includes an offset provision regarding workers' compensation, such clause is enforceable only to the extent that it prevents a double recovery by the injured employee); Cruz v. Wausau Ins., 866 A.2d 1238, 1239-40 (R.I. 2005) (court only decided a procedural matter and raised no objection to injured employee's recovery from both WC and his employer's UIM coverage); Charest v. Pawtucket Mut. Ins. Co., 1996 WL 936921 (R.I. Super. April 23, 1996) (an injured employee who recovered on his employer's UIM coverage and received WC payments was required to offset those two amounts when he sought coverage from a third source, his personal UIM coverage).

-4-

Inc., 416 Mass. 652 (1993), and Nat'l Union Fire Ins. Co. v. Figaratto, 423 Mass. 346 (1996), squarely foreclosed Baker's claim. We do not agree. Berger and National Union only address whether the exclusivity provision of the Massachusetts workers' compensation statute permits an injured employee to recover under both WC and her employer's UIM coverage. See Berger, 416 Mass. at 652 ("At issue is whether the exclusivity provision of the Workers' Compensation Act, G.L. c. 152, § 23 (1992 ed.), bars an employee's claim against the owner and the insurer of the employer's motor vehicles, for underinsurance benefits."); Nat'l Union, 423 Mass. at 348 (explaining that the court was bound to follow its recent decision in Berger, which held that "the exclusivity provision of the Workers' Compensation Act . . . barred the employee's claim against the employer's insurers."). In contrast, in Baker's case, she has recovered workers' compensation benefits under the Rhode Island workers' compensation statute, rather than the Massachusetts statute. Therefore, in our view, Berger and National Union are not dispositive.[5]

Thus, because the SJC has not "spoken directly to the precise question that confronts us," we are tasked with predicting "how that court likely would decide the issue." Gonzalez Figueroa

_____

[5]It is also worth noting that the SJC acknowledged in Berger that state courts have reached a variety of conclusions on this question depending on how they have interpreted the exclusivity provisions of their own workers' compensation statutes. See Berger, 416 Mass. at 655 and n.8.

-5-

v. J.C. Penney Puerto Rico, Inc., 568 F.3d 313, 318 (1st Cir. 2009). We are persuaded that the SJC's decisions in Berger and National Union were largely governed by the court's policy concerns regarding providing Massachusetts companies with a predictable and reliable scheme concerning the interplay of workers' compensation and underinsured motorist coverage, and holding down insurance costs for Massachusetts companies.[6] Because this case concerns a Massachusetts company doing business in Massachusetts, and carrying an auto insurance policy executed and delivered in Massachusetts, we expect these policy concerns would lead the SJC to apply the conclusions of Berger and National Union to this case, even though

_____

[6]In Berger the court noted that the Massachusetts uninsured motorist provision was intended to "minimize the possibility of . . . catastrophic financial loss [to] the victims of an automobile accident," while in the case of a workplace injury, "the employee is protected from the risk of catastrophic financial loss through workers' compensation." 416 Mass. at 656 (internal citations and quotations omitted). In National Union, the court expanded on this policy concern:

> As a matter of fair and equal treatment, a person injured in the course of employment while in a motor vehicle of the employer need not obtain any greater insurance benefits than another person sustaining a similar injury in the course of employment but not in a motor vehicle of the employer. The cost of UM coverage for employers would be substantially higher than otherwise if that coverage in a standard policy applied to employees' on-the-job motor vehicle injuries. That increase would not be accompanied by a corresponding reduction in the cost of workers' compensation coverage.

423 Mass. at 349-50.

-6-

those cases concerned collection of WC payments under the Massachusetts worker's compensation scheme.

However, that conclusion does not end our analysis. In National Union, decided three years after Berger, the SJC carved out an exception to the general bar on an employee's recovery under both WC and her employer's UIM coverage. "[W]e would not extend the bar imposed by the exclusivity provision of the Workers' Compensation Act to make ineffective [UIM] coverage (or any other coverage) that an employer explicitly purchased for the purpose of providing [UIM] coverage (or any other coverage) to employees injured in the course of their employment." 423 Mass. at 350-51. Below, the district court granted summary judgment to St. Paul without addressing the carve-out language in National Union, and therefore it did not reach the factual question of whether the underinsurance coverage purchased by Safety was indeed a bargained-for provision intended to provide Safety's employees with additional protection from damages caused by underinsured motorists.[7]

_____

[7]St. Paul argues that the National Union carve-out only applies to "non-standard" policies, which St. Paul appears to define as policies that do not use the standard forms issued by the Massachusetts Insurance Commissioner. The plain language of the National Union carve-out, however, suggests a broader exclusion of any coverage explicitly purchased in order to provide additional protection to the employer's workers. This exception requires a factual determination as to whether the UIM coverage was elected and paid for by the employer in order to protect his employees from the harm of underinsured motorists.

Our review of the contract shows that at the time of the accident Safety carried underinsured motorist coverage in the amount of $100,000 per person and $300,000 per accident. The contract also shows that Safety paid a premium of $79.00 in order to receive this coverage during the policy year. Further, we take judicial notice of the Massachusetts Commercial Automobile Insurance Manual for 2002, the year the policy was issued.[8] According to the Manual, it appears that in 2002 there was no compulsory underinsured motorist coverage requirement for commercial automobile policies and insurers were only required to offer underinsured motorist coverage at limits up to $35,000 per person/$80,000 per accident. In addition, the Manual set the "basic limit" for underinsured motorist coverage at $20,000 per person/$40,000 per accident. The limited facts available to us suggest that perhaps Safety purchased and paid for additional UIM coverage above and beyond what was required by law in force at the time. However, without the benefit of discovery, we are unable to conclusively determine whether Safety indeed bargained for the UIM

---

[8] The manual is available in PDF form on the public website of the Automobile Insurers Bureau of Massachusetts (AIB). See http://www.aib.org/ContentPages/DocumentView.aspx?DocId=559. The AIB is a non-profit association of Massachusetts insurers that is subject to the "visitation, supervision and examination" of the Massachusetts Commissioner of Insurance. See Constitution of Automobile Insurers Bureau of Massachusetts, at http://www.aib.org/ContentPages/DocumentView.aspx?DocId=447.

coverage contained in its policy with the intention of protecting its workers from damage caused by uninsured motorists.

We therefore vacate the district court's entry of summary judgment and remand for appropriate discovery on the question of whether the National Union carve-out applies, namely whether Safety "explicitly purchased" its underinsured motorist coverage "for the purpose of providing [UIM] coverage . . . to employees injured in the course of their employment." 423 Mass. at 350-51. If the court concludes in the affirmative, the terms of the contract would require that any recovery by Baker under the underinsured motorist provision would be reduced by "[t]he amount paid under a workers' compensation law." In other words, an offset would be required.

**Vacated** and **remanded** for further proceedings consistent with this opinion. Costs are taxed in favor of Heidi M. Baker.