# United States Court of Appeals
## For the First Circuit

No. 11-1897

HEIDI M. BAKER,

Plaintiff, Appellant,

v.

ST. PAUL TRAVELERS INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Boudin, Selya and Stahl, Circuit Judges.

Merrill J. Friedemann, with whom Anthony J. Gianfrancesco,
William F. Warren, and Baluch, Gianfrancesco & Mathieu were on
brief, for appellant.
Paul V. Sullivan, with whom Sullivan, Whitehead & DeLuca LLP
was on brief, for appellee.

February 28, 2012

**STAHL**, **Circuit Judge**. In 2010, we remanded this state law insurance action for appropriate discovery on the narrow question of whether plaintiff-appellant Heidi M. Baker's employer "explicitly purchased" underinsured motorist (UIM) coverage from defendant-appellee St. Paul Travelers Insurance Company (St. Paul) for the purpose of providing such coverage to employees like Baker who are injured in the course of their employment. After that discovery occurred, the district court denied Baker's motion to compel further discovery and for sanctions against St. Paul, and the court granted summary judgment in favor of St. Paul. Baker appeals both rulings. We affirm.

## I.  Facts & Background

We recounted the factual and procedural history of this case in some detail in Baker v. St. Paul Travelers Insurance Co. (Baker I), 595 F.3d 391 (1st Cir. 2010), and we thus summarize only the relevant background here.

Baker is a Rhode Island resident and a former employee of Safety Source Northeast (Safety), a Massachusetts corporation. On December 17, 2002, Baker was driving one of Safety's vehicles as part of her job duties and was seriously injured in a car accident caused by the other driver. The accident occurred in Boston, Massachusetts. Baker filed a third-party claim against the tortfeasor, whose insurance company paid the full policy limit of $20,000.00, which was insufficient to cover Baker's damages. She

-2-

also filed for and received workers' compensation (WC) benefits through the Rhode Island WC system, and she made a UIM claim against her personal automobile insurance company, which she settled for the policy limit of $25,000.00. Finally, Baker sought to recover under the UIM provision of Safety's automobile insurance policy, which was provided by St. Paul.

St. Paul denied Baker's claim, citing Massachusetts law for the proposition that an employee cannot recover for work-related injuries under both WC and her employer's UIM coverage. Baker challenged that denial in Rhode Island state court, and St. Paul removed the case to federal district court. Baker argued that Rhode Island law should apply to the interpretation of the policy, but that even under Massachusetts law, the bar on recovery under both WC and the employer's UIM coverage would not apply, because the UIM coverage was a bargained-for provision.

In Baker I, we determined that Massachusetts law does indeed apply in this case. See id. at 392-93. In Massachusetts, an employee generally cannot recover under both WC and her employer's UIM policy, see Berger v. H.P. Hood, Inc., 624 N.E.2d 947 (Mass. 1993); Nat'l Union Fire Ins. Co. v. Figaratto, 667 N.E.2d 877 (Mass. 1996), except where the employer has "explicitly purchased" the UIM coverage "for the purpose of providing [such] coverage (or any other coverage) to employees injured in the course

-3-

of their employment," Nat'l Union, 667 N.E.2d at 881.  We thus found that Baker's appeal turned on whether Safety had "explicitly purchased" its UIM coverage within the meaning of the National Union carve-out, and we remanded the case for appropriate discovery to answer that discrete question.  Baker I, 595 F.3d at 395.

On remand, after discovery proceeded, Baker filed a motion to compel further discovery and to impose sanctions against St. Paul as a result of a dispute that arose during the deposition of St. Paul's Rule 30(b)(6) witness.  See Fed. R. Civ. P. 30(b)(6).  The parties also cross-moved for summary judgment.  The district court denied Baker's discovery motion and granted summary judgment to St. Paul.  This timely appeal followed.

## II. Discussion

### A. The discovery motion

We review discovery orders for abuse of discretion, Ji v. Bose Corp., 626 F.3d 116, 121 (1st Cir. 2010), including the denial of a motion for discovery sanctions, Meléndez-García v. Sánchez, 629 F.3d 25, 33 (1st Cir. 2010).

In response to Baker's Rule 30(b)(6) subpoena, St. Paul designated Deborah Restaine, a Product Management Director.  Toward the very end of Restaine's nearly three-hour deposition, St. Paul instructed Restaine not to answer several of Baker's questions, which St. Paul believed were outside the scope of the discovery that we had ordered on remand.  Baker concluded the deposition and,

-4-

eighteen days later, moved to compel further discovery and for sanctions, arguing that Restaine was not sufficiently knowledgeable to have served as a Rule 30(b)(6) witness and that St. Paul had violated Rule 30(c)(2) by instructing Restaine not to answer. The magistrate judge denied Baker's non-dispositive motion, and the district court affirmed. See Fed. R. Civ. P. 72(a).

Though Baker's initial motion requested both further discovery and sanctions against St. Paul, she has focused her appeal on the district court's denial of her motion for sanctions. In other words, she has made no real argument that we should order St. Paul to make Restaine available for further questioning or designate another Rule 30(b)(6) witness. Baker has therefore waived any review of the denial of her motion to compel. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). However, if Baker had properly put the issue before us, we would affirm the lower court's refusal to order further discovery. Baker has not demonstrated that she was unable to obtain information during the deposition that fell within the scope of the discovery we mandated in Baker I.[1] We thus fail to see how either St. Paul's

---

[1] The only claim Baker has made in this regard is that, but for the instructions not to answer, she would have questioned Restaine regarding the existence of a second Safety insurance policy, BA 01320676, which included an endorsement in which Safety certified, in exchange for a reduced premium, that the vehicles

instructions not to answer or Restaine's alleged lack of knowledge "resulted in substantial prejudice" to Baker, nor has Baker come close to convincing us that the lower court's order on the motion to compel "was plainly wrong." <u>Ji</u>, 626 F.3d at 122 (citations and internal quotation marks omitted).

Turning to the motion for sanctions, we begin with St. Paul's act of instructing Restaine not to answer a series of questions at the end of her deposition. Rule 30(c)(2) states that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). Baker argues that St. Paul's instructions not to answer violated Rule 30(c)(2) and that St. Paul is thus sanctionable under Rule 30(d)(2), which allows a district court to "impose an appropriate sanction -- including the reasonable expenses and attorney's fees incurred by any party -- on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

---

covered by that policy would only carry employees. However, BA 01320676 is not the policy that covered the vehicle Baker was driving when she was injured, and its endorsement is thus inapplicable here. The question for remand was whether Safety explicitly purchased the UIM coverage under <u>policy MA 05700143</u> to provide that coverage to its employees. The inability to question Restaine, or another Rule 30(b)(6) witness, about policy BA 01320676 therefore did not substantially prejudice Baker. <u>Ji</u>, 626 F.3d at 122.

-6-

Though the magistrate judge found that it was procedurally improper for St. Paul to instruct Restaine not to answer, he reviewed the ninety-eight-page transcript of Restaine's deposition and determined that all but one of Baker's objected-to, unanswered questions (which began on page eighty-six) were indeed outside the narrow scope of the discovery that we prescribed in Baker I. The only question that fell within the scope of discovery related to the premium that Safety had paid for the optional UIM coverage included in the policy at issue. The magistrate judge found, however, that Baker already knew the answer to that question and therefore was not prejudiced when St. Paul instructed Restaine not to answer it.

We need not address whether it was proper under Rule 30 for St. Paul to instruct Restaine not to answer Baker's questions "to enforce a limitation ordered by the court." Fed. R. Civ. P. 30(c)(2). Even assuming, as the magistrate judge concluded, that St. Paul should not have issued the instructions,[2] Baker has not satisfied the abuse of discretion standard. See Meléndez-García, 629 F.3d at 33. Because "[t]rial judges have considerable discretion in the selection and imposition of sanctions," Barreto v. Citibank, N.A., 907 F.2d 15, 16 (1st Cir. 1990), a party

_____

[2] Indeed, St. Paul's instruction to Restaine not to answer Baker's question regarding the premium that Safety paid for the UIM coverage was clearly improper under Rule 30(c)(2), since, as the magistrate judge found, that question fell within the scope of the discovery we ordered.

appealing an order with regard to sanctions "bears a formidable burden in attempting to convince the court of appeals that the lower court erred," Koken v. Black & Veatch Constr., Inc., 426 F.3d 39, 53 (1st Cir. 2005) (citation and internal quotation marks omitted).  Baker has not even attempted to argue that any of her unanswered questions fell within the scope of discovery, nor has she demonstrated that St. Paul "impede[d], delay[ed], or frustrate[d] the fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2).  She therefore has not met her "formidable burden" of convincing us that the district court abused its discretion. Koken, 426 F.3d at 53.

Baker's second argument is that Restaine was not sufficiently knowledgeable or prepared for the deposition, so the district court should have treated her testimony as a non-appearance and issued sanctions under Rule 37.  See Fed. R. Civ. P. 37(d)(1)(A)(i).  A Rule 30(b)(6) designee must be able to testify on behalf of an organization "about information known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6).  Rule 37(d)(1)(A)(i), in turn, allows a court to issue sanctions if the Rule 30(b)(6) witness "fails, after being served with proper notice, to appear for that person's deposition."  Fed. R. Civ. P. 37(d)(1)(A)(i).  Baker cites a Fifth Circuit case for the proposition that, when an organization's Rule 30(b)(6) designee is not knowledgeable about the relevant facts, "the appearance is, for

all practical purposes, no appearance at all," and the organization is susceptible to sanctions under Rule 37. Resolution Trust Corp. v. S. Union Co., 985 F.2d 196, 197 (5th Cir. 1993); see also, e.g., Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 299-305 (3d Cir. 2000).

What Baker overlooks is that we held in R.W. International Corp. v. Welch Foods, Inc., 937 F.2d 11 (1st Cir. 1991), that sanctions for non-appearance are only available when a deponent "'literally fails to show up for a deposition session.'" Id. at 15 n.2 (quoting Salahuddin v. Harris, 782 F.2d 1127, 1131 (2d Cir. 1986)). R.W. International did not distinguish between the deposition of a natural person and a Rule 30(b)(6) deposition, which the Fifth Circuit found "presents a potential for abuse which is not extant where the party noticing the deposition specifies the deponent." Resolution Trust, 985 F.2d at 197. Because a corporation controls whom to designate for a Rule 30(b)(6) deposition, the Fifth Circuit concluded, the corporation should be subject to sanctions if it designates a witness who is not knowledgeable about the relevant facts. Id.

We need not decide today whether we agree with the Fifth Circuit, because Baker has failed to even mention R.W. International in her brief, much less convince us why it is distinguishable. See Zannino, 895 F.2d at 17 ("It is not enough merely to mention a possible argument in the most skeletal way,

leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). In any event, on these facts, we would not carve out an exception to the R.W. International rule for Rule 30(b)(6) depositions. In Resolution Trust, both Rule 30(b)(6) designees literally "possessed no knowledge relevant to the subject matters identified in the Rule 30(b)(6) notice."[3] Resolution Trust, 985 F.2d at 196. Similarly, when the Third Circuit affirmed an award of sanctions for constructive non-appearance of a Rule 30(b)(6) witness in Black Horse Lane, it was based on a record demonstrating that the Rule 30(b)(6) designee had done "nothing except show his face," "refused to answer questions in an intelligent way," "refused to prepare," "and just literally thumbed his nose at the defendants and, frankly, at the Court." 228 F.3d at 300.

That was clearly not the case here. Restaine had worked extensively in the insurance industry and specifically in underwriting for much of her career. She testified that she had reviewed the documents at issue in this case, and she answered all of Baker's questions, except when she was instructed not to do so at the very end of her deposition. Tellingly, Baker has pointed us to no evidence that she ever objected to Restaine's qualifications

---

[3] During one of the depositions at issue in Resolution Trust, counsel for the defendant "recited each item of inquiry designated in the notice and asked if [the Rule 30(b)(6) designee] had any knowledge thereof. In every instance the answer was 'no.'" 985 F.2d at 197.

-10-

during the deposition itself.  The fact that Restaine had to review certain documents before answering Baker's questions about those documents, which Baker makes much of on appeal, does not convince us that Restaine was an unfit Rule 30(b)(6) witness.

## B.  The motion for summary judgment

We review de novo the district court's decision to grant St. Paul's summary judgment motion.[4]  Hartford Fire Ins. Co. v. CNA Ins. Co., 633 F.3d 50, 53 (1st Cir. 2011).  We will uphold the grant of summary judgment "if the record, evaluated in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Id. at 54 (citation and internal quotation marks omitted).  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party.  A fact is 'material' if it has the potential of determining the outcome of the litigation."  Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009) (citation omitted).

The only question for remand was whether Safety "explicitly purchased" the UIM coverage under policy MA 05700143 "for the purpose of providing [such] coverage (or any other coverage) to employees injured in the course of their employment."

---

[4] Because we find that the district court properly granted summary judgment to St. Paul, we need not address the denial of Baker's cross-motion for summary judgment.

-11-

<u>Nat'l Union</u>, 667 N.E.2d at 881. In <u>National Union</u>, the Massachusetts Supreme Judicial Court did not explain what it meant by "explicitly purchased," <u>see</u> <u>id.</u>, but in <u>Baker I</u>, we found that the crucial inquiry was "whether Safety . . . bargained for the UIM coverage contained in its policy with the intention of protecting its workers from damage caused by uninsured [or underinsured] motorists," 595 F.3d at 395. Thus, to demonstrate her eligibility for UIM benefits under the policy, Baker would have to show that, in purchasing or bargaining for the UIM coverage, Safety specifically intended to provide that coverage to its employees. <u>Nat'l Union</u>, 667 N.E.2d at 881; <u>Baker I</u>, 595 F.3d at 395. Otherwise, the general rule preventing an employee in Massachusetts from recovering under both WC and her employer's UIM provision would apply. <u>Nat'l Union</u>, 667 N.E.2d at 880.

Having now had the opportunity to conduct appropriate discovery on remand, Baker has pointed to no evidence in the record that would permit a reasonable jury to resolve this case in her favor. <u>Scottsdale Ins. Co.</u>, 561 F.3d at 77. Specifically, she has not pointed to any evidence that Safety purchased or bargained for the UIM coverage under policy MA 05700143 to provide its "employees with additional protection from damages caused by underinsured motorists." <u>Baker I</u>, 595 F.3d at 394. Nor has she presented any evidence that Safety strictly prohibited non-employees from riding in company vehicles, or that the company ever represented to her

-12-

that she would receive UIM coverage as an employee, such that we might infer that Safety purchased or bargained for the UIM coverage to protect its employees.

The testimony that was elicited from Safety's president and its insurance agent during their depositions on remand directly contradicts Baker's claim that Safety intended to provide UIM coverage to its employees. Rather, that testimony indicates that Safety was unaware of the very existence of UIM coverage under policy MA 05700143 and that the insurance agent included the UIM coverage in order to protect the company in the event that an employee was involved in an accident outside of Massachusetts or carried a non-employee passenger in the vehicle.

Safety's president, Robert Kingman, testified that he was the sole person at the company responsible for purchasing insurance and making insurance-related decisions. Kingman had been working with insurance agent Robert Muenzberg, Jr. since sometime in the 1990s. Kingman testified that he never told Muenzberg to put UIM coverage or any other particular provisions in the policy at issue, that he "never even understood" that he was purchasing UIM coverage under the policy, and that it "never would have occurred to [him]" that the UIM coverage would protect employees from damage caused by underinsured motorists.

Muenzberg testified that he "probably" discussed UIM coverage with Kingman "at some point," because it was a "typical

conversation" that he had with clients purchasing commercial auto insurance policies in Massachusetts, though he did not remember such a conversation specifically. It was Muenzberg's understanding that a UIM provision would not apply to an employee in Massachusetts, because the employee would be covered by WC. Thus, as Muenzberg explained during his deposition, if he did discuss UIM coverage with Kingman, that conversation would have been about the need for UIM coverage in the event of "out-of-state exposure beyond the compulsory Massachusetts limits and the possibility that the vehicle might have a passenger in it that's not an employee, perhaps a customer." What is clear from Muenzberg's deposition testimony is that Safety certainly never communicated to him that the company wanted UIM coverage to protect its employees.

Recognizing that there is no direct evidence that Safety explicitly purchased or bargained for the UIM coverage with the intention of protecting its employees, Baker claims that Safety had a policy prohibiting non-employees from riding in company vehicles and that we should therefore infer that Safety purchased the UIM coverage for its employees. We reject that claim because we find no evidence of such a policy. Kingman specifically testified during his deposition that there was no formal or informal policy and that allowing non-employees in the vehicles was "just not [a] very good business practice." Kingman's son, Brian Kingman, confirmed that, while the company "van was meant for work" and

-14-

"[i]t would be frowned upon" for an employee to bring a passenger in the van, an employee could do so if the trip "was business related."[5]  And Muenzberg testified that, if Safety had a policy forbidding passengers in the vehicles, Kingman would have told him and "we would have thought about the coverage differently."  Absent any evidence that Safety believed the vehicle in question only carried employees, and given the testimony to the contrary, we will not infer that the company must have purchased the UIM coverage for the explicit purpose of covering its workers injured on the job.

Grasping at straws, Baker claims that the existence of a second Safety Massachusetts insurance policy (BA 01320676) creates a genuine issue of material fact, because that policy included an endorsement in which Safety certified that the vehicles covered by the policy would only carry employees.[6]  As discussed above, BA 01320676 is not the policy that covered the vehicle Baker was driving when she was injured.  Nonetheless, Baker argues in her

_____

[5] Baker points to the fact that Brian Kingman told her that she could not use the company vehicle to pick up her children at school, but, as the district court found, "discouraging or prohibiting personal use of the vehicles does not correlate with a prohibition on all non-employee passengers at all times, specifically with regard to customers."  Baker v. Safety Source Ne., No. 07-314-ML, 2011 WL 2181175, at *5 (D.R.I. June 3, 2011).

[6] The endorsement stated in relevant part: "You paid a reduced premium for Personal Injury Protection Coverage because you certified that your covered 'auto' would be used only in your business and only to carry your 'employees' and that you have and will continue to have a Massachusetts Workers' Compensation Policy during the period of this policy."

brief that the BA 01320676 endorsement "confirms unmistakably that Ms. Baker's employer demanded that no one other than the employees were permitted to be in the company vehicles." If that were true, however, Baker fails to explain why Safety would not have executed a similar endorsement for policy MA 05700143. Though we must draw all reasonable inferences in Baker's favor, she cannot rely exclusively on "unsupported speculation" to defeat St. Paul's motion for summary judgment. Barry v. Moran, 661 F.3d 696, 703 (1st Cir. 2011) (citation and internal quotation marks omitted).

Baker's final claim -- that there remains a genuine issue of material fact as to whether Safety's witnesses and documentary evidence are credible -- "is squarely foreclosed by our case law." Harriman v. Hancock Cnty., 627 F.3d 22, 33 (1st Cir. 2010); see also Sears, Roebuck & Co. v. Goldstone & Sudalter, P.C., 128 F.3d 10, 18 (1st Cir. 1997) ("A party cannot create an issue for the trier of fact by relying on the hope that the jury will not trust the credibility of witnesses." (citation and internal quotation marks omitted)).

Although Safety apparently discouraged its employees from bringing passengers in company vehicles, the evidence indicates that the company either purchased the UIM coverage unwittingly or out of a recognition that non-employees, including customers, might nonetheless wind up in company cars. Because Baker has failed to demonstrate a genuine issue of material fact as to whether Safety

-16-

explicitly purchased or bargained for the UIM coverage under policy MA 05700143 with the specific intention of providing such coverage to employees injured on the job, the <u>National Union</u> carve-out does not apply here.  <u>See</u> 667 N.E.2d at 881.  The district court therefore properly granted St. Paul's motion for summary judgment and denied Baker's.  <u>Hartford Fire Ins. Co.</u>, 633 F.3d at 53.

## III. Conclusion

We <u>affirm</u> the district court's orders.  No costs are awarded.