# United States Court of Appeals
## For the First Circuit

No. 24-1424

BEIJING ABACE BIOLOGY CO., LTD.,

Plaintiff, Appellant,

v.

CHUNHONG ZHANG and MTOZ BIOLABS, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

Before

Rikelman, Selya, and Kayatta,
Circuit Judges.

Willard C. Shih, with whom Stephen T. Melnick, Littler
Mendelson, P.C., and Wilentz, Goldman & Spitzer P.A. were on brief,
for appellant.
Zackary L. Stillings, with whom Yuanyou Sunny Yang and Frost
Brown Todd, LLP were on brief, for appellees.

December 2, 2024

**SELYA**, <u>Circuit Judge</u>. Plaintiff-appellant Beijing Abace Biology Co., Ltd. (Abace) challenges the district court's entry of summary judgment in favor of defendants-appellees Dr. Chunhong Zhang (Dr. Zhang) and MtoZ Biolabs, Inc. (MtoZ). Discerning no error, we affirm.

**I**

We rehearse the relevant facts and travel of the case. In that endeavor, we "scrutinize the record in the light most favorable to the summary judgment loser and draw all reasonable inferences therefrom to that party's behoof." <u>All. of Auto. Mfrs.</u> v. <u>Gwadosky</u>, 430 F.3d 30, 34 (1st Cir. 2005).

Abace and Creative Dynamics, Inc. (Creative Dynamics) are affiliated companies that provide research and development resources in the life sciences and pharmaceutical spaces. Both companies were founded in 2004. Abace is headquartered in Beijing and Creative Dynamics is headquartered in New York. Although the precise nature of the corporate relationship between Abace and Creative Dynamics is murky, the record suggests that the two firms have a "contract" relationship and that some corporate officers work for both companies.[1]

In December of 2014, Abace hired Dr. Zhang. She became a "supplier" in its creative proteomics department. As such, Dr.

---

[1] We need not probe this too deeply as only Abace — and not Creative Dynamics — is a party to this appeal.

Zhang was required to "find the product or service" requested by "go[ing] online, like Google or Baidu [a Chinese search engine], and search[ing] which company can provide this [product or service] and then call[ing] them to ask them for the price and how long they can deliver this [product or service] and then giv[ing] the supplier's price back to [sic] sales person." While working for Abace, Dr. Zhang was stationed in China.

During her tenure with Abace, Dr. Zhang signed several employment-related agreements. These included two so-called Cadres Agreements, dated January 9, 2016, and November 2, 2016, respectively.[2] The agreements are the same in all aspects relevant to this decision. Separate and apart from the Cadres Agreements, the record reflects that the parties entered into a Confidentiality and Non-Competition Agreement (the Non-Compete Agreement) and a Labor Contract, both dated November 2, 2016.

Each of the Cadres Agreements stated that it "appli[ed] to all current employees of Creative Dynamics and CD Biosciences (CD Inc), i.e., all current employees of the Company." We assume — favorably to Abace — that Dr. Zhang fell within the reach of those agreements.

---

[2] Although these are called the "Creative Dynamics Cadres Agreements," the signatories are Abace and Dr. Zhang. This discrepancy is unexplained, but it is not material to the resolution of this appeal.

Those agreements also defined certain terms. As relevant here, those agreements defined "senior cadre[s]" as "the first and second level leaders of each Division," meaning the "primary and secondary head of each Division." Additionally, they defined "senior executive[s]" as those persons who "[e]xercise the right of operation and management" and who have certain powers over personnel. What is more, the January Cadres Agreement stated that, "[w]ithin 2 years from the date of termination of senior executives, they shall not hold a position or hold a part-time job in an organization with similar business and competitive relationship with the Company."

On May 1, 2017, Dr. Zhang's employment with Abace was terminated, and she signed an employment separation certificate. This certificate referred to the obligations in the Non-Compete Agreement.

In September of 2017, Dr. Zhang co-founded MtoZ, a company headquartered in Massachusetts. MtoZ provides proteomics, metabolomics, bioinformatics, and biopharmaceutical analysis services to researchers. See About Us, MtoZ-Biolabs, https://www.mtoz-biolabs.com/about-us.html [https://perma.cc/5SJQ-4NCF].

Abace responded to this initiative by filing an action against Dr. Zhang and MtoZ in the United States District Court for

the District of Massachusetts.[3]  In the operative pleading (the second amended complaint), it claimed that Dr. Zhang had breached both her contract with Abace and her fiduciary duty to Abace; that MtoZ had tortiously interfered with Abace's business and business relationships; and that Dr. Zhang and MtoZ were liable for unjust enrichment.[4]  After pretrial discovery was completed, all parties moved for summary judgment.  The district court granted summary judgment in favor of Dr. Zhang and MtoZ.  See Creative Dynamics, Inc. v. Zhang, No. 20-11711, 2024 WL 1375941 (D. Mass. Mar. 31, 2024).  This timely appeal followed.

## II

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party."  Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992) (quoting United States v. Plat 20, Lot 17, Great Harbor Neck, 960 F.2d 200, 204 (1st Cir. 1992)).  A fact

---

[3] There were additional parties below (including Creative Dynamics, as a plaintiff).  None of these parties is a party to this appeal.

[4] Simultaneously, Abace sought relief against Dr. Zhang in China in both arbitration and court proceedings.  Neither of those proceedings is still pending, and we make no further mention of them.

is material if it could affect the outcome of the case. See Baker v. St. Paul Travelers Ins. Co., 670 F.3d 119, 125 (1st Cir. 2012). "The summary judgment ritual is standard fare: once the movant 'adumbrate[s] an absence of evidence to support the nonmoving party's case,' . . . the burden shifts to the nonmovant to establish the existence of a genuine issue of material fact." Boykin v. Genzyme Therapeutic Prods., LP, 93 F.4th 56, 60 (1st Cir. 2024) (alteration in original) (quoting Brennan v. Hendrigan, 888 F.2d 189, 191 (1st Cir. 1989)).

We review the district court's grant of summary judgment de novo. See Spencer v. Roche, 659 F.3d 142, 145 (1st Cir. 2011). We peruse the record in the light most hospitable to the nonmovant of the granted motion and draw all reasonable inferences in the nonmovant's favor. See id.

## III

This case arises under the aegis of diversity jurisdiction. See 28 U.S.C. § 1332(a). The parties agree that the substantive law of China controls. The district court accepted this agreement, and so do we. See Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991) ("Where . . . the parties have agreed about what law governs, a federal court sitting in diversity is free, if it chooses, to forgo independent analysis and accept the parties' agreement.").

In undertaking to apply Chinese law, we do not write on a pristine page. "[T]he task of deciding foreign law [is] a chore federal courts must often perform." Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 721 (1st Cir. 1996) (second alteration in original) (quoting Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1357 (1st Cir. 1992)). The Civil Rules instruct that "[i]n determining foreign law, [a federal] court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. This approach parallels the approach appropriately taken to the determination of state law by a federal court. See Kunelius v. Town of Stow, 588 F.3d 1, 9 (1st Cir. 2009) ("Although we have no single Polaris to guide our prediction of the state court's resolution of [the relevant] questions, we rely on analogous cases decided in the . . . state . . . and other secondary sources . . . .").

China is a civil law jurisdiction — a fact that requires us to decipher the law primarily from the constitution, statutes, and regulations. See Qiang Bjornbak et al., China, 40 Int'l Law. 547, 550 (2006) ("China is a civil law jurisdiction . . . ."); see also China, Fed. Jud. Ctr.: Judiciaries Worldwide, https://judiciariesworldwide.fjc.gov/country-profile/china [https://perma.cc/BD4J-YKAJ]; cf. Palencia v. Perez, 921 F.3d 1333, 1339 (11th Cir. 2019) ("The generally recognized sources of

- 7 -

law in [a civil law] jurisdiction are constitutional provisions, statutes, administrative regulations, and customs.").[5]  In the case at hand, the district court appropriately relied upon "the Constitution of the People's Republic of China, statutes and decrees, administrative orders, and local rules" as well as the judicial interpretations issued by the Supreme People's Court (China's highest court).  See Creative Dynamics, 2024 WL 1375941, at *3.  The parties provided much of this material, including certified translations of reported cases and judicial interpretations.  In addition, the parties furnished the court with expert reports that discuss these materials and the state of the law in China.

We hasten to add that the district court was not obligated to give the views of any expert any particular weight. See Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co., 585 U.S. 33, 36 (2018) (holding that even foreign government's statements are not binding because court may consider any relevant material). In the last analysis, the dimensions of foreign law must be determined by the inquiring court, not simply by rubber-stamping

---

[5] Abace disputes the use and reliability of the Judiciaries Worldwide website.  But as Dr. Zhang notes, this is a resource provided by the Federal Judicial Center — a resource that is commonly used by federal courts in a wide variety of contexts. See, e.g., Victor v. Nebraska, 511 U.S. 1, 16-17 (1994) (citing Federal Judicial Center for "definitions of reasonable doubt most widely used in the federal courts").

the views of some expert witness.  See <u>Balkan Energy Ltd.</u> v. <u>Republic of Ghana</u>, 302 F. Supp. 3d 144, 153 n.5 (D.D.C. 2018).

Instead, an inquiring court must "regard the matter of foreign country law as purely a 'question of law.'"  <u>Kalmich</u> v. <u>Bruno</u>, 553 F.2d 549, 552 (7th Cir. 1977) (quoting Fed. R. Civ. P. 44.1).  The court must answer that question of law through its own research and analysis.  <u>See</u> <u>id.</u>  Appellate review is de novo, <u>see</u> <u>Robidoux</u> v. <u>Muholland</u>, 642 F.3d 20, 22 (1st Cir. 2011), and the lower court's answer to the question must be fairly supportable. <u>Cf.</u> <u>R.W. Int'l Corp.</u> v. <u>Welch Foods, Inc.</u>, 88 F.3d 49, 52 (1st Cir. 1996) (stating that federal courts may make "predict[ions]" as to state law if "reasonably clear" (quoting <u>VanHaaren</u> v. <u>State Farm Mut. Auto. Ins. Co.</u>, 989 F.2d 1, 3 (1st Cir. 1993))).

**IV**

Given that China is a civil law jurisdiction, we start our analysis with the relevant statutory text.  Article 24 of the Labor Contract Law states that "[p]ersonnel subject to non-competitive restrictive covenant [sic] shall be limited to the employer's senior management personnel, senior technical personnel and other personnel who are obliged to keep confidentiality."  <u>See</u> <u>Hunan Mingjing New Bldg. Materials Co.</u> v. <u>Zhang Yongxing</u>, No. 4486, at 10 (Changsha Hunan Interm. People's Ct. June 13, 2022)

(interpreting labor contract law of People's Republic of China).[6]
The parties dispute whether Dr. Zhang was properly classified as
senior management or technical personnel or had other
confidentiality obligations.[7] We conclude that Dr. Zhang does not
fit into either of these categories and, therefore, any non-compete
contractual provisions are unenforceable under Chinese law.

In analyzing this issue, the parties quarrel about
whether we should look primarily to the courts of Beijing, rather
than the courts of China generally. Abace argues that only law
from Beijing courts is binding, and that the district court erred
in its categorization of Chinese courts as less geographically
rigid than U.S. courts. On this point, however, the parties'
contrasting views are purely academic: Beijing courts agree with
the dispositive principle in this case, which is that non-compete
agreements are only enforceable against senior management or
technical personnel and employees with confidentiality
obligations. See, e.g., Beijing Golden Cap. Gen. Aviation Co. v.
Gao Hui, No. 3362, at 8 (Beijing 3d Interm. People's Ct. Mar. 29,

---

[6] The certified translations of these decisions are available
in the appendices provided by the parties, and the page numbers
cited reflect the pagination provided there.

[7] Although MtoZ is also named as a defendant and appellee,
the parties agree that its liability, if any, is coterminous with
that of Dr. Zhang. Consequently, we refer to Dr. Zhang for the
most part as if she was the sole defendant-appellee. Our ruling,
of course, extends to the claims brought against MtoZ.

2021).  And because both parties have cited non-Beijing cases, we do not hesitate to rely on those cases as persuasive authority.

**A**

Courts have made pellucid that — under Chinese law — "[e]mployers can only sign [binding] non-competition agreements with employees for specific job positions."  Shengli Oilfield Furuite Petroleum Equip. Co. v. Wang Zhifeng, No. 2250, at 19 (Dongying Shandong Interm. People's Ct. Feb. 16, 2022).  They also have made pellucid that employers "cannot require employees to assume non-competition obligations for general job positions." Id.  Thus, the fact that Dr. Zhang signed one or more agreements containing non-compete provisions does not end our inquiry.

On this record, we are constrained to find that Dr. Zhang's role fell within the category that Chinese courts have excluded from the purview of non-compete agreements.  Abace conceded at the summary judgment hearing that Dr. Zhang was not "senior technical personnel."  What is more, neither Chinese statutes nor Chinese courts have defined with particularity which employees are to be considered senior management personnel.  Even so, common understanding can guide our approach.  To rise to the level of senior management, it seems inexorable that the role must involve some exercise of discretion in a company's affairs.  See Management, Black's Law Dictionary (12th ed. 2024).  Here, there is not a scrap of evidence that Dr. Zhang was senior management

personnel. Indeed, the record does not show that she had any management responsibilities.

Dr. Zhang's job responsibilities, by contrast, appear to fall within the realm of general sales. Ordinarily, general sales personnel have been held to fall short of the requisite level. See Hunan Mingjing, No. 4486, at 10; Zhongshan Laser Ent. Co. v. Xu Jun, No. 3271, at 4 (Zhongshan Guangdong Interm. People's Ct. May 6, 2021). So it is here. The general sales roles described in Hunan Mingjing and Zhongshan Laser seem to be fairly comparable to Dr. Zhang's role in level of responsibility: her work primarily involved using Google and Baidu to connect salespeople with vendors.

To cinch the matter, Abace introduced no evidence that Dr. Zhang was either in a supervisory or management role. On the contrary, the record indicates that Dr. Zhang started in an entry level position: an Abace representative testified that when Dr. Zhang joined the company, she was a "graduate without any experience." And even after Dr. Zhang was promoted, there is no evidence that her duties ever extended beyond "communicat[ing] with the supplier," "communicat[ing] with the marketing department," and "customer service."

A review of the agreements at issue here confirms our commonsense understanding of the relevant terms in Chinese law. Even under the definitions in the Cadres Agreements, Dr. Zhang is

- 12 -

neither a "senior cadre" nor a "senior executive" to whom a non-compete agreement might apply. "Senior cadres" are defined as "the first and second level leaders of each Division, i.e., those position [sic] higher than the head of the battle group." The record contains no evidence that Dr. Zhang came within this definition. "Senior executive[s]" are defined as employees who, among other things, "[e]xercise the right of operation and management," who can "employ or dismiss subordinates," and who can "transfer personnel." Once again, the record is devoid of any evidence that Dr. Zhang either performed any of these functions or — as a practical matter — had the right to do so notwithstanding the language in the contracts. And in any event, Abace has not argued that she did.

Abace has a fallback position. It contends that Dr. Zhang's non-compete obligation is enforceable because she "signed the agreement indicating that she was a Cadre — explicitly defined by the Agreement as a senior executive." This contention lacks force. First, "senior cadre" and "senior executive" have different definitions in the Cadres Agreements, and only senior executives are defined as having management responsibilities. Second, Chinese courts have rejected nearly identical arguments. See Qingdao Xingyue Iron Tower Co. v. Yin Yichang, No. 13686, at 4-5 (Jiaozhou Shandong People's Ct. Mar. 16, 2002) (holding that signing agreement containing non-compete provisions was "not

- 13 -

sufficient to identify the defendant . . . as a non-competition or duty of confidentiality person," because agreement was "generally applicable to different positions and employees").[8] It is clear, then, that the Cadres Agreements — as well as any other agreement signed by Dr. Zhang — are not dispositive as to the analysis of whether Dr. Zhang's role satisfied the relevant legal standard.

In a last-ditch effort to gain some traction, Abace insists that the record is tenebrous as to whether every employee is offered the Cadres Agreement. This lack of clarity, Abace continues, extends to whether Dr. Zhang was offered the agreement only after being promoted. At oral argument, Abace suggested that any sufficiently senior employee could be subject to a non-compete regardless of whether he can plausibly lay claim to being management or technical personnel. Building on this porous foundation, Abace summarily concludes that these are genuine disputes of material fact sufficient to defeat summary judgment.

The fly in the ointment is that these are not material facts: they do not have any bearing on the outcome of the case. Even if the Agreements did establish that Dr. Zhang was a senior executive, that would be insufficient to bridge the gap that separates the general run of executives from senior management or

---

[8] In light of the facts of the cited case, the date provided in the case translation may be incorrect. The defendants' expert report lists the year of decision as 2021. This discrepancy, though, is not material to our decision, and we do not pursue it.

technical personnel.  Because Abace's proposed interpretation —

that any sufficiently senior employee could be subject to a non-

compete regardless of whether he could plausibly lay claim to being

management or technical personnel — contradicts the explicit text

of Article 24, we reject it.

In all events, we are not convinced by Abace's contention

that Dr. Zhang's signing of the agreements is conclusive evidence

that she was a senior executive.  Those agreements clearly

contemplate that employees who do not meet the definitions of

"senior executive" and "senior cadre" may nonetheless be required

to sign Cadres Agreements.  And even if it is true that an employee

must achieve an arbitrary internal seniority level to be offered

such a contract, that would not render the employee either a senior

executive or a senior cadre under the Agreements' own definitions.

To sum up, as we have explained, Chinese law makes plain

that it is the nature of the job description, not the employer's

label, that is the relevant inquiry as to whether a non-compete

provision can apply to a role.  See Qingdao Xingyue, No. 13686, at

4-5.  Viewing the record as a whole, then, we discern no genuine

issue of material fact.  And taking the established facts in the

light most hospitable to Abace, we nonetheless conclude that the

district court did not err in determining that Dr. Zhang — when

employed by Abace — was neither senior management nor senior

technical personnel such as would bind her to a non-compete provision under Chinese law.

**B**

The final category of individuals that may be subject to a non-compete agreement under Chinese law includes "other personnel with confidentiality obligations." Hunan Mingjing, No. 4486, at 10. This category has been limited by courts to those employees who have access to confidential information that is not accessible to the average employee or to the public. See Foshan FIND Culture & Art Co. v. Xiang Mingqi, No. 15463, at 10 (Foshan Guangdong Interm. People's Ct. Nov. 21, 2022). In other words, the information must be beyond "the normal scope of information that a [general employee] can understand." Hunan Mingjing, No. 4486, at 10-11. Thus, for non-compete restrictions to apply, courts have required that employers demonstrate that an employee had access to "trade secrets." Zhongshan Laser, No. 3271, at 4.

Abace does not identify any such trade secrets in its brief. Nor is there any proof of them in the record. To fill this void, Abace points only to Dr. Zhang's use of "information about our business, our customer [sic] and a lot of documents." But under Chinese law, this is insufficient to demonstrate that she had information that was not accessible to average employees. See Hunan Mingjing, No. 4486, at 10-11 (holding that former employee's knowledge of customers was not enough for non-compete

- 16 -

agreement to be enforceable); Foshan FIND, No. 15463, at 10 (holding that "general knowledge, experience, and skills" acquired by employee are distinguishable from "trade secrets" and are insufficient to establish confidentiality obligation); Hefei Yuehe Educ. & Training Sch. Co. v. Chen Mei, No. 3423, at 7 (Hefei Anhui Interm. People's Ct. June 11, 2021) ("[The employer] has no evidence to prove that the above information constitutes a trade secret that needs to be kept confidential. . . . If non-competition restrictions are imposed on workers on this ground, it would be too harsh for workers and would also be contrary to the provisions of the Labor Contract Law."). Dr. Zhang's knowledge of general business information appears to be no different in kind than what any employee would have from a former employer, and Abace has not argued to the contrary.

We are aware that this holding is in tension with the language of the agreements. For example, the Non-Compete Agreement defines "trade secrets" as "customer, product, procedure, business and service information" of Abace "or any affiliated business entity." But — as the district court concluded, see Creative Dynamics, 2024 WL 1375941, at *6-7 — we cannot give effect to this language because it contravenes Chinese law. See Hefei Yuehe, No. 3423, at 7 (distinguishing trade secrets from general business information); cf. Paul Arpin Van Lines, Inc. v. Universal Transp. Servs., Inc., 988 F.2d 288, 290 (1st Cir. 1993) (holding that "an

otherwise valid contract that results in the violation of a public-protection statute or regulation is unenforceable").  Put bluntly, to the extent that this language encompasses ordinary business information that would be available to general employees, it cannot serve as a basis to trigger the non-competition obligation against Dr. Zhang.

V

We need go no further.  We discern no genuine issue of material fact and hold that a necessary condition for the enforcement of a non-compete agreement under Chinese law has not been satisfied.  Accordingly, the district court did not err either in granting Dr. Zhang's motion for summary judgment or in denying Abace's cross-motion.

**<u>Affirmed</u>**.